IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Darby Township,          :
                    Petitioner  :
                                :
          v.                    :  No. 1105 C.D. 2017
                                :  Submitted: January 5, 2018
Workers' Compensation Appeal    :
Board (Kiley),                  :
                    Respondent  :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: January 29, 2018


        Upper Darby Township (Employer) petitions for review of the order
of the Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) decision denying Employer's Termination Petition
because Employer failed to prove William Kiley (Claimant) had fully recovered
from his work-related injury. For the reasons that follow, we affirm.


                                    **I.**

        On April 5, 2013, Claimant sustained an injury to his left knee while
in the course of his employment as a police officer with Employer. A Notice of
Temporary Compensation Payable (NTCP) was issued by Employer listing

Claimant's work injury as a "left knee strain" and describing the injury as "twisted left knee when he stepped off curb." (Record (R.) Item No. 14, NTCP.) The parties then entered into an Agreement for Compensation for Claimant's left knee strain injury, indicating that benefits were payable as of April 6, 2013, and terminated on June 10, 2013, when Claimant returned to work without restriction. On June 24, 2013, when Claimant was unable to work due to his work injury, benefits were reinstated pursuant to a subsequent Agreement for Compensation.

On February 13, 2015, Employer filed a Termination Petition alleging that Claimant had fully recovered from his work injury. This Termination Petition was based upon the independent medical examination (IME) of Eric Levicoff, M.D. (Dr. Levicoff). Claimant filed an answer denying that there was any basis to terminate his benefits.

**II.**

In support of its Petition, Employer offered the deposition testimony of Dr. Levicoff, a board certified orthopedic surgeon. He testified that he performed an IME of Claimant on February 10, 2015, at which time he obtained a history, reviewed medical records and diagnostic studies, and conducted a physical examination.[1] During the IME, Claimant told him that he injured his left knee when he stepped awkwardly off a curb during an ambulance call. Claimant was

---

[1] Employer also offered into evidence a copy of Dr. Levicoff's February 10, 2015 IME report and a Physician's Affidavit of Recovery of the same date.

seen in the emergency department that same day and was later referred to several different orthopedists.

Dr. Levicoff testified that he reviewed a magnetic resonance imaging (MRI) study performed approximately two weeks after Claimant's work injury which indicated an acute medial collateral ligament (MCL) sprain and swelling around the MCL. He stated that his review of this initial MRI was also consistent with chronic patellar tendon changes and thickening of the patellar tendon, which he believed was indicative of a more chronic issue that pre-dated Claimant's work injury. Orthopedists whom Claimant was referred also diagnosed him with chronic patellar tendonitis and chondromalacia patella, a degenerative arthritic condition of the knee, both of which are permanent conditions corroborated by Dr. Levicoff's review of Claimant's records and his own examination findings. Dr. Levicoff stated that Claimant ultimately had surgery to repair his chronic patellar tendonitis but this surgery did not provide him any relief.

Based upon his examination and review of Claimant's records, Dr. Levicoff opined that Claimant had fully recovered as of the date of the IME from the MCL sprain, the accepted work injury. He further opined that Claimant's patellar tendonitis and chondromalacia patella were not related to or aggravated by his work injury. On cross-examination though, Dr. Levicoff acknowledged that Claimant did not have any symptoms of left knee pain prior to his April 5, 2013 work injury, and since that time, he has experienced relatively constant knee pain.

Claimant testified that prior to his work injury, he had no problems with his left knee and did not experience any knee pain, discomfort or instability. He injured his knee during a medical call when he stepped backward off a curb and twisted his left knee, experiencing immediate pain. After notifying his supervisor, Claimant reported to the Delaware County Memorial Hospital's emergency room for an evaluation. An x-ray was performed, Claimant was instructed not to return to his work duties and was advised to see an orthopedist. Claimant testified that on April 11, 2013, he was examined by Dr. Kazanjian, an orthopedic specialist, who ordered an MRI of his left knee. After reviewing this MRI, Dr. Kazanjian provided Claimant with a knee brace and recommended that he undergo physical therapy. Claimant then began physical therapy two to three times a week at Premier Physical Therapy.

Dr. Kazanjian released Claimant to return to work on June 10, 2013, despite the fact that he still had pain in his left knee. Claimant testified that he experienced increased pain while performing his police duties, even more severe than he previously experienced, and he became totally disabled again on June 24, 2013. Because of this, Claimant sought a second opinion from Dr. Mehallo, an orthopedic specialist at the Rothman Institute. Dr. Mehallo recommended physical therapy and gave Claimant a cortisone injection in his left knee, which produced no relief.

Claimant testified that he then returned to physical therapy two to three days a week under the direction of Michael Tancredi, D.C. (Dr. Tancredi), a chiropractor who specializes in sports and work-related injuries. During the course

4

of treatment, Dr. Tancredi referred Claimant to Dr. Nicholas DiNubile (Dr. DiNubile), an orthopedic surgeon who first examined Claimant in October 2013 and ordered another MRI. After reviewing this MRI, Dr. DiNubile recommended that Claimant continue with physical therapy but also advised that he possibly needed knee surgery. Claimant testified that because his left knee symptoms did not resolve with continued physical therapy, he agreed to the surgery, which Dr. DiNubile performed on February 26, 2014. Claimant stated that he then underwent post-surgical rehabilitation with Dr. Tancredi two to three times a week; however, he experienced no improvement in his left knee symptoms.

Claimant testified that he decided to seek yet another medical opinion because he wanted to be pain-free and able to go up and down steps, squat, kneel and get in and out of a car without pain. Claimant was referred to Dr. Kevin Walsh (Dr. Walsh), an orthopedic and physical rehabilitation specialist at Premier Orthopedics. Claimant testified that after ordering and reviewing the results of another MRI, Dr. Walsh concluded that he remained totally disabled and could not return to work. Dr. Walsh then provided Claimant with a series of four Orthovisc injections in his left knee between March 2015 and May 2015. Claimant testified that he felt no improvement in his left knee after these injections.

Dr. Walsh then referred him to Dr. Arthur Bartolozzi (Dr. Bartolozzi), an orthopedic surgeon, for a further orthopedic surgical consultation which occurred on June 1, 2015. Claimant testified that Dr. Bartolozzi recommended a course of platelet rich plasma (PRP) treatment and referred Claimant back to Dr. Walsh for consideration of this type of treatment. Claimant agreed to the PRP

treatment but it was delayed at the time of his testimony because he needed preapproval from his insurance company.

Claimant testified that since his work injury, he has continued to maintain his police officer certifications required by the Municipal Police Officers Education and Training Commission so that he can be restored immediately to his police duties when physically capable of doing so. Claimant further testified that since June 24, 2013, none of his treating physicians have released him to return to any employment activities, including his police duties. He continues to undergo physical therapy once a week and testified that he cannot run, go up or down stairs, squat, kneel, stand for long periods of time or get in and out of a car without pain in his left knee. Claimant testified that he experiences knee pain every day and that his knee sometimes gives out on him.

Claimant also offered into evidence the deposition testimony of Dr. Tancredi, a licensed chiropractor who first evaluated Claimant in August 2013. Dr. Tancredi testified that Claimant exhibited tenderness over the left MCL, tenderness over the infrapatellar tendon, and decreased girth in his left calf indicating atrophy most likely from disuse. He stated that he provided treatment to Claimant several times per week including ultrasound, active release technique, physical therapy and strengthening modalities.

Dr. Tancredi testified that he also referred Claimant to Dr. DiNubile, an orthopedic surgeon who specializes in knees. He stated that because conservative treatment failed to provide Claimant with any significant

improvement in his left knee pain symptoms, Dr. DiNubile performed surgery on Claimant's left knee. He testified that he provided Claimant with post-surgical rehabilitation, but Claimant's left knee pain symptoms persisted and he observed positive findings of continued injury upon examination. He then referred Claimant to Dr. Walsh for injection treatments and then to Dr. Bartolozzi for another surgical evaluation. Dr. Bartolozzi concluded that Claimant was not a surgical candidate. Dr. Tancredi testified that he regularly received and reviewed reports from Drs. DiNubile, Walsh and Bartolozzi regarding Claimant's treatment and progress.

Dr. Tancredi further testified that Claimant's initial MRI showed a sprained MCL, as well as arthritic and degenerative changes and some chronic changes in the patellar tendon which can be completely asymptomatic for years until an injury occurred. Dr. Tancredi opined as to what was causing Claimant's knee problems, stating:

> As time went on, the [MCL] healed. He doesn't even have any problems there. . . . The problem is, is that he developed this secondary infrapatellar tendinopathy, and the thickening of it can then change the mechanics of how the patella glides in the femur. Now what happens is, when that patella tendon is thickened and irritated, the knee – every time he bends his knee, the kneecap now hits the femur sooner. . . . [I]f it was something where he could run through it and it would just be a little sore afterwards, I'd send him back to work. You know, a lot of us have pain and are sore and stiff and achy in a lot of places. The thing is, when that kneecap hits that femur, his knee will give out on him. And, again, if he's trying to defend himself or someone is trying to take his gun and his knee gives out, that could be life threatening. So, I don't take those chances.

(Record (R.) Item No. 19, Michael J. Tancredi D.C. Deposition 9-9-2015, pp. 21-23.)

Dr. Tancredi opined that the condition described above is directly and causally related to Claimant's work injury, noting that Claimant did not have a single symptom prior to April 5, 2013. He explained that Claimant's secondary tendinopathy, which is caused by his work injury, continues to show up on his MRIs, is evident during his physical examinations and has been noted by his other treating physicians. Dr. Tancredi testified that Claimant cannot push off hard on his left knee, squat or run, and he cannot kneel without pain. His opinion at that time was that Claimant was disabled from performing any police duties.

The WCJ found Claimant's testimony to be credible and convincing that he experienced no symptoms whatsoever in his left knee prior to the work injury, and that since that time he has experienced constant pain and related problems in his left knee. The WCJ also found the testimony of Dr. Tancredi to be credible and convincing as to his opinion that Claimant remains incapable of returning to his police duties due to his continued left knee pain and symptoms directly and causally related to his work injury. The WCJ pointed out that all of Claimant's treating physicians confirmed the propriety of treatment being provided, the diagnosis of Claimant's left knee problems and his continued total disability.

Concomitantly, the WCJ found the testimony of Dr. Levicoff not credible or convincing that Claimant was fully recovered from his work injury as

of the date of his IME because this opinion was based upon a one-time examination of Claimant and was disputed by Dr. Tancredi and four orthopedic specialists. Further, Dr. Levicoff did not explain to the satisfaction of the WCJ why Claimant's acknowledged left knee problems and resulting total disability are not causally related to his work injury where it is undisputed that he was completely pain and symptom free immediately prior to the injury and his symptoms have persisted since that time.

Based on all of the above, the WCJ found that Employer failed to sustain its burden of proving that Claimant had fully recovered from his work injury and was able to return to work absent restrictions. Therefore, Employer's Termination Petition was denied.

## III.

Employer appealed to the Board arguing that the determination was not supported by substantial evidence, the WCJ capriciously disregarded the evidence of record, and the WCJ failed to issue a reasoned decision. Employer further argued that the WCJ erred in denying the Termination Petition because a review petition was never filed, Claimant's accepted injury was an injury to his left MCL, and the other injuries the WCJ found that he developed in his left knee are wholly unrelated and unconnected to his work injury of April 5, 2013.

The Board affirmed the decision of the WCJ, noting that Employer could not meet its burden of proof because the WCJ rejected Dr. Levicoff's testimony as to Claimant's full recovery. The Board also rejected Employer's

9

challenge to the WCJ's credibility determinations and its argument that the decision was not well reasoned. This appeal followed.[2]

## IV.

### A.

On appeal, Employer contends that the WCJ erred in denying its Termination Petition because all the medical experts agree that Claimant had fully recovered from the accepted work injury – an MCL sprain to his left knee. Employer also contends that since Claimant had not filed a review petition, the WCJ erred in expanding Claimant's work injury to include new or subsequently-arising injuries such as infrapatellar tendinopathy and thickening of the patellar tendon, which were not present at the time of Claimant's work injury or issuance of the NTCP.

In the context of a termination petition, "where the claimant's ongoing disability is related to an injury or condition which is of a very similar nature and/or affects the same body parts which have been recognized as compensable, then the burden remains with an employer to establish an independent cause for the

---

[2] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

same." *Visteon Systems v. Workers' Compensation Appeal Board (Steglik)*, 938 A.2d 547, 552 (Pa. Cmwlth. 2007) (citing *Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 626 A.2d 94 (Pa. 1993); *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983)).

We agree that the medical evidence establishes that the accepted work injury to Claimant's medial collateral ligament had healed; but it is also clear that the WCJ found there were secondary effects from that injury. The question then is whether the WCJ properly added those secondary effects as an injury when Claimant had not filed a review petition to change the nature of the injury.

Under Section 413(a) of the Workers' Compensation Act (Act),[3] a WCJ may amend the NTCP (or description of injury listed in an agreement) at any time during litigation of *any* petition if the evidence demonstrates that the injury sustained in the original work incident is different or more expansive than that listed and the employer is aware that a corrective amendment is a matter in controversy in the proceeding. *See Walter v. Workers' Compensation Appeal*

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771. Section 413(a) provides:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

*Id.*

11

*Board (Evangelical Community Hospital),* 128 A.3d 367, 372 (Pa. Cmwlth. 2015); *Harrison v. Workers' Compensation Appeal Board (Auto Truck Transport Corp.),* 78 A.3d 699, 703 (Pa. Cmwlth. 2013) (citing *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009)). Because the issue of whether Claimant's infrapatellar tendinopathy was work-related was a matter in controversy, the WCJ, once he found those injuries work-related, was permitted to amend the description of Claimant's injuries.

Even if the failure of Claimant to file a review petition did not preclude the WCJ from expanding Claimant's work injury, Employer contends that there was not substantial evidence to support the finding that the secondary infrapatellar tendinopathy and thickening of the patellar tendon were related to and aggravated by Claimant's original work injury.

In making that argument, Employer relies upon the testimony of its one and only medical witness, Dr. Levicoff, for the proposition that Claimant had fully recovered from his work injury. However, the WCJ specifically rejected Dr. Levicoff's opinions that Claimant had fully recovered from his work injury and that his ongoing left knee pain symptoms were not causally related to his work injury. The WCJ also found that Employer failed to establish an independent cause for these symptoms. "[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013).

12

In this case, Dr. Tancredi's credible testimony constitutes substantial evidence to support the finding that the additional injuries added to the description of Claimant's work injury were, in fact, work-related. His testimony as recounted by the WCJ in Finding of Fact 22 was:

> Dr. Tancredi testified that Claimant's April 5, 2013 work injury was to the medial collateral ligament of the left knee, **which injury had healed and, as a result, Claimant had no problems resulting from that injury itself**. Dr. Tancredi stated that **Claimant's work injury caused a secondary problem of infrapatellar tendinopathy**, which was confirmed on an MRI diagnostic study and changed the mechanics of how Claimant's left patella collides into his femur, which then causes pain and his left knee to give out when the knee is under pressure. . . . Dr. Tancredi stated his opinion that this condition of Claimant's left knee is directly and causally related to Claimant's April 5, 2013 work injury and is permanent in nature.

(WCJ's Opinion at 7) (emphases added).

**B.**

Employer also asserts that the WCJ did not issue a reasoned decision as required by Section 422(a) of the Act.[4]  A decision is "reasoned" if it allows for

---

[4] 77 P.S. § 834.  Section 422(a) provides, in pertinent part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.  The workers' compensation judge shall specify the evidence upon

**(Footnote continued on next page…)**

13

adequate appellate review without further elucidation. *Daniels v. Workers'*
*Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa.
2003). Moreover:

> Although our Supreme Court has held that a WCJ need
> not explain credibility determinations relating to a
> witness who testifies before the WCJ, Section 422(a) of
> the Act requires some explanation of credibility
> determinations by a WCJ with regard to conflicting
> deposition testimony in order to enable this Court to
> review a WCJ's decision. Under Section 422(a) of the
> Act, a WCJ must articulate the objective rationale
> underlying his credibility determinations where the
> testimony of such witnesses is conflicting. A WCJ may
> satisfy the reasoned decision requirement if he
> summarizes the witnesses' testimony 'and adequately
> explains his credibility determinations.' *Clear Channel*
> *Broad. v. Workers' Comp. Appeal Bd. (Perry),* 938 A.2d
> 1150, 1157 (Pa. Cmwlth. 2007).

*Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72,
76 (Pa. Cmwlth. 2012).

---

**(continued…)**

> which the workers' compensation judge relies and state the reasons
> for accepting it in conformity with this section. When faced with
> conflicting evidence, the workers' compensation judge must
> adequately explain the reasons for rejecting or discrediting
> competent evidence. . . . The adjudication shall provide the basis
> for meaningful appellate review.

*Id*.

Here, the WCJ summarized the conflicting testimony of the medical witnesses, made credibility determinations, and provided adequate reasons for why he found Dr. Tancredi to be more credible and convincing than Dr. Levicoff. The WCJ's explanation is sufficient to allow for adequate appellate review, and "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citing *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers)*, 769 A.2d 1243 (Pa. Cmwlth. 2001)).

Accordingly, the order of the Board is affirmed.

DAN PELLEGRINI, Senior Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Darby Township,
      Petitioner

   v.

Workers' Compensation Appeal
Board (Kiley),
      Respondent

:
:
:
:   No. 1105 C.D. 2017
:
:
:
:

**O R D E R**

AND NOW, this <u>29</u><sup>th</sup> day of <u>January</u>, 2018, the Order of the Workers' Compensation Appeal Board at No. A16-0651 is affirmed.

            _____

            DAN PELLEGRINI, Senior Judge