**VISTEON SYSTEMS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STEGLIK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 2007.

Decided Dec. 14, 2007.

Kelly A. Hemple, Philadelphia, for petitioner.

Vincent M. Vangrossi, Norristown, for respondent.

BEFORE: COLINS, Judge, and PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Visteon Systems (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming an order of the Workers' Compensation Judge (WCJ), denying Employer's petition to terminate the compensation benefits of Beverly Steglik (Claimant). We now affirm.

Employer employed Claimant as an assembler for approximately twenty-two years. Claimant's job duties consisted of inspecting circuit boards, placing them in a main board and soldering the boards. Claimant's job duties required her to perform daily repetitive activities, including regular reaching, carrying, twisting and neck and arm posturing, as she worked on thousands of boards per week. As a result of these repetitive activities, Claimant began experiencing pain in her left shoulder and upper back. On August 21, 1995, Claimant's pain increased to the extent that she was unable to continue working. Claimant was out of work for a period of four to six months, during which time she underwent a course of therapy and treatment. Claimant returned to her regular job at some point in early 1996.[1]

Nevertheless, Claimant's symptoms progressively worsened and she began experiencing pain in her neck as well as in the area between her neck and shoulder. In 2002, Claimant again missed work as a result of her symptoms.[2] By supplemental agreement dated December 9, 2002, Employer acknowledged that Claimant sustained a work related injury on August 21, 1995, in the nature of a left shoulder sprain/strain as a result of repetitive use. This supplemental agreement indicated

---

1. The record is unclear as to the exact dates that Claimant was out of work.

2. Again, the record is not clear as to the dates that Claimant missed work.

that while Claimant received workers' compensation benefits, said benefits were suspended as of November 28, 2002, based upon her return to work.

As Claimant resumed her regular job duties, her condition continued to deteriorate with her right shoulder becoming symptomatic. During the course of her employment on January 22, 2003, Claimant suffered a severe onset of pain, especially in her right shoulder, which she reported to Employer's plant physician. Nonetheless, Claimant eventually resumed working. However, based upon her deteriorating condition and increasing symptoms, Employer's plant physician removed Claimant from work. Claimant sought medical treatment for her condition. Despite the supplemental agreement executed by the parties, Employer was reluctant to pay Claimant's medical bills.

On December 3, 2003, Claimant filed a claim petition against Employer alleging that sustained work injuries in the nature of chronic myofascial pain, bilateral shoulder strain and cervical sprain as a result of her repetitive activities at work on January 22, 2003. Claimant also filed two separate penalty petitions as a result of Employer's failure to pay her medical bills. Employer filed an answer essentially denying the material allegations of Claimant's petitions. Employer then filed a petition to terminate Claimant's compensation benefits alleging that she had fully recovered from her August 21, 1995, work injury as of March 3, 2004. Claimant filed an answer denying that she was fully recovered. The petitions were consolidated for purposes of hearing and decision by a WCJ.

Following numerous hearings, the WCJ ultimately granted Claimant's claim petition but denied her penalty petitions as well as Employer's termination petition.[3]

With regard to the claim petition, the WCJ found that as a result of her repetitive work on January 22, 2003, Claimant suffers from "chronic cervical sprain and strain, cervical spondylosis and a tendonopathy of the paraspinal tendon of the left shoulder. . . ." (WCJ's Decision, December 29, 2004, Finding of Fact No. 8, R.R. at 64a). With regard to Claimant's penalty petitions, the WCJ concluded that the medical providers failed to submit bills on the proper forms and did not specify which charges related to the accepted work injury. With regard to Employer's termination petition, the WCJ concluded that Employer had failed to meet its burden of establishing that Claimant was fully recovered. Neither party appealed this decision by the WCJ.

Following an independent medical examination of Claimant, Employer filed the present petition to terminate Claimant's compensation benefits on October 20, 2005, alleging that she had fully recovered from her work-related injuries as of September 28, 2005. Claimant filed an answer denying that she was fully recovered. The case was assigned to the WCJ and proceeded with hearings. At these hearings, Employer presented the deposition testimony of Dr. L. Richard Trabulsi, a Board-certified orthopedic surgeon. Dr. Trabulsi performed the independent medical examination of Claimant on September 28, 2005, at the request of Employer. This examination consisted of a physical examination as well as a review of Claimant's prior medical records, including at least three diagnostic studies.

Dr. Trabulsi acknowledged Claimant's recognized work injuries, including "chronic cervical strain and sprain, cervical spondylosis with muscle spasm secondary to the strain and sprain and tendinopathy of

---

**3.** The record lacks any evidence of an appeal by Employer of the WCJ's decision.

the left shoulder." (R.R. at 47a). Nevertheless, based upon his examination and record review, Dr. Trabulsi opined that Claimant had fully recovered from these injuries and was capable of returning to her pre-injury job with Employer without restrictions. On cross-examination, Dr. Trabulsi would not necessarily agree that his physical examination of Claimant took seven minutes, but he indicated that he could perform a neck an upper extremities evaluation in that period of time, which he noted was not unusual for an orthopedic surgeon. Dr. Trabulsi attributed Claimant's complaints at the time of examination to normal degenerative changes in her spine. Dr. Trabulsi could not recall if Claimant complained of pain during certain parts of his examination.

In opposition to Employer's petition, Claimant testified on her own behalf, relating a history of her work injuries and her ongoing complaints of pain. More specifically, Claimant indicated that her condition had progressively worsened such that the pain was radiating down her arms and into her hands. Claimant complained of recurring headaches and indicated that she could not lift her hands over her shoulder or head. Claimant also presented the testimony of her fiancé, Gregory Land, who was present with her during Dr. Trabulsi's examination. Mr. Land noted that Claimant expressed pain during said examination, especially when she was moving her arms and flexing her neck.

In further opposition to Employer's termination petition, Claimant presented the deposition testimony of Dr. Scott Fried, a Board-certified orthopedic surgeon and Claimant's treating physician. Dr. Fried began treating Claimant in December of 2005. At that time, Dr. Fried testified that Claimant presented with increased pain in neck and shoulder areas which was traveling down her arms and into her hands as well as occasional arm numbness. Dr. Fried noted several positive findings during his physical examination of Claimant, including a positive sign at the radial nerve at the left elbow and forearm, a positive sign at the left thoracic outlet impinging the nerves between the neck and shoulder, a positive sign in her wrist of her left hand and a positive sign while raising her arms above her head.

Dr. Fried indicated that an EMG nerve conduction study conducted on March 14, 2006, showed evidence of "bilateral brachial plexus or thoracic outlet nerve injury consistent with her clinical complaints" as well as "involvement of the ulnar nerve at the elbows and also radial nerve involvement at the right forearm." (R.R. at 88a). Based upon the EMG, his physical examination of Claimant and a review of Claimant's prior medical records and diagnostic studies, Dr. Fried opined that Claimant suffered from "supraspinatus tendonitis and shoulder strain ... a paracervical injury with involvement of her brachial plexus nerve ... long thoracic nerve injury ... repetitive strain injury in both right and or left upper extremity ... a posterior occipital neuralgia ... radial neuropathy ... as well as ulnar neuritis at both elbows." (R.R. at 90a–91a).

Dr. Fried opined that Claimant's condition was the result of the repetitive activities she performed in her work for Employer. Dr. Fried further opined that Claimant was not fully recovered from her original work injuries which have worsened as indicated above. Dr. Fried described Claimant's condition as a "fairly classic cumulative trauma or repetitive strain injury" with initial "symptoms localized distally and then in the shoulder area, continuing and increasing with respect to her nerve and upper extremity symptoms." (R.R. at 92a). Dr. Fried later reiterated that Claimant "has not gotten relief and

she has had the same said ongoing symptoms" from which she has not fully recovered. (R.R. at 93a).

On cross-examination, Dr. Fried acknowledged that Claimant was referred to him by her attorney. Dr. Fried then discussed his fees for medical reports and depositions. Dr. Fried proceeded to explain his office procedure with respect to a new patient, noting that one hour of time is allotted for his physician assistant to take a history and one hour is then allotted for him to take a further history and perform an examination.

Ultimately, the WCJ issued a decision and order denying Employer's termination petition, concluding that Employer had failed to meet its burden of proving that Claimant had fully recovered from her work injuries. In reaching this conclusion, the WCJ found the testimony of Claimant to be credible and persuasive. The WCJ also found the testimony of Dr. Fried to be credible and more persuasive than the testimony of Dr. Trabulsi. In this regard, the WCJ noted that Dr. Fried was Claimant's treating physician with a concentration on injuries to and treatment of the upper extremities, that Dr. Fried allocates extensive time, two hours, to his initial evaluations whereas Dr. Trabulsi's examination only took seven minutes and that Dr. Fried's opinions and conclusions were consistent with Claimant's credible testimony. Employer appealed to the Board but the Board affirmed the decision of the WCJ. Employer now appeals to this Court.

■ On appeal,[4] Employer first argues that the Board erred as a matter of law in affirming the decision of the WCJ as the WCJ improperly placed the burden upon it to show full recovery from injuries not recognized as compensable. More specifically, Employer argues that the WCJ erred in accepting the testimony of Dr. Fried as credible wherein he opined that Claimant suffered from numerous conditions not previously recognized as compensable by way of the earlier supplemental agreement or WCJ's decision. In other words, Employer contends that the WCJ effectively expanded the description of Claimant's compensable work injuries without requiring her to file a review petition. We disagree.

■ To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased and/or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Compensation Appeal Board (J.C. Penney Co.)*, 747 A.2d 430 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 564 Pa. 718, 764 A.2d 1074 (2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from his/her work-related injuries. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth.253, 595 A.2d 697 (1991). Where an employer alleges the existence of an independent cause of Claimant's continuing disability unrelated to the work injury, the burden remains on employer to prove that such cause exists.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Further, in *Leon E. Wintermyer, Inc. v. Work-* *ers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), our Supreme Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

*City of Philadelphia v. Workers' Compensation Appeal Board (Fluek)*, 898 A.2d 15 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 590 Pa. 662, 911 A.2d 937 (2006); *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983).

 Moreover, in the course of defending against a termination petition, when a claimant alleges a new and distinct physical injury or psychiatric condition not contemplated by the original agreement or award of compensation, the burden rests with the claimant to establish that this new injury/condition was work-related. *See Fluek* (claimant's accepted injury to knee and later alleged injury to back); *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 728 A.2d 902 (1999) (claimant's accepted injury to neck and back and later alleged psychiatric injury).[5] However, where the claimant's ongoing disability is related to an injury or condition which is of a very similar nature and/or affects the same body parts which have been recognized as compensable, then the burden remains with an employer to establish an independent cause for the same. *See Beissel* (claimant's accepted injury to lower back and later alleged continuing back problems); *Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)*, 533 Pa. 461, 626 A.2d 94 (1993) (claimant's accepted injury to left knee and later alleged continuing problems with left leg).

Employer relies on our Supreme Court's decision in *Commercial Credit Claims* in support of its argument. However, such reliance is misplaced. In the present case, the earlier supplemental agreement and WCJ decision established that Claimant suffered from the following work-related, compensable injuries: left shoulder sprain/strain, chronic cervical strain and sprain, cervical spondylosis with muscle spasm secondary to the strain and sprain and tendinopathy of the left shoulder. In his deposition testimony, Dr. Fried specifically opined that Claimant had "not" fully recovered from her work injuries of 1995 and 2003. (R.R. at 92a). Dr. Fried also testified that Claimant has "not gotten relief [from her original symptoms] and she has had the same said ongoing symptoms."

While this testimony alone, accepted as credible by the WCJ, would have been sufficient to support the WCJ's decision denying Employer's termination petition, Dr. Fried went further to explain how Claimant's symptoms have progressed to include new problem areas. In addition to ongoing problems with her neck and shoulder areas, Dr. Fried testified that Claimant currently suffered from radial neuropathy and ulnar neuritis at both elbows, a long thoracic nerve injury and involvement of her brachial plexus nerve. However, Dr. Fried specifically related these problems back to her original work injuries. Moreover, Dr. Fried indicated that these new problems stem from Claimant's original repetitive trauma to the nerves surrounding her neck, back and shoulder.[6]

We see no error on the part of the WCJ in accepting the testimony of Dr. Fried as credible and persuasive nor can we say that the WCJ improperly expanded the description of Claimant's compensable

---

**5.** In *Fluek*, we noted that the claimant was not without recourse, as he could file a review or modification petition.

**6.** In other words, while these new problems areas may include Claimant's arms, elbows and hands, said problems stem from Claimant's original work injuries which included trauma to the brachial plexus and long thoracic nerves which travel from the upper back down through the arms. *See* R.R. at 80a–81a.

work injuries without requiring her to file a review or modification petition. Furthermore, as Dr. Fried testified that Claimant's current condition and problems related back to her original work injuries, we cannot say that the WCJ improperly placed the burden upon Employer to show an independent cause for the same. Thus, the Board did not err in affirming the decision of the WCJ in this regard.[7]

■ Next, Employer argues that the Board erred in affirming the decision of the WCJ as the WCJ failed to issue a reasoned decision in accordance with Section 422(a) of the Act.[8] Again, we disagree.

Section 422(a) of the Act provides, in pertinent part, as follows:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence ... The adjudication shall provide the basis for meaningful appellate review.

Our Supreme Court discussed this Section of the Act in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003), wherein the Court stated that "a [WCJ's] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation, and if it allows for adequate review by the appellate courts under applicable standards of review." *Daniels*, 574 Pa. at 76, 828 A.2d at 1052. Further, the Court in *Daniels* held that when the testimony presented is by way of deposition, a WCJ must articulate reasons why the testimony of one witness was credited over the testimony of another; the "resolution of conflicting evidence cannot be supported by a mere announcement that [the WCJ] deemed one expert more 'credible and persuasive' than another." *Daniels*, 574 Pa. at 78, 828 A.2d at 1053.

In the present case, the WCJ adequately summarized the testimony before him, set forth concise findings of facts, issued credibility determinations with respect to the testimony of Claimant and both parties' respective medical experts and sufficiently explained the basis of these determinations. In rejecting the testimony of Dr. Trabulsi in favor of the testimony of Dr. Fried, the WCJ specifically pointed to several factors, including Dr. Fried's status as Claimant's treating physician, Dr. Fried's concentration of his practice on injuries and treatment of the upper extremities, the time given by Dr. Fried to the evaluation of a Claimant (one hour with physician assistant and one hour with him) as opposed to the time afforded to the examination by Dr. Trabulsi (seven minutes) and

---

7. Employer raises an additional argument in its appeal that the decisions of the WCJ and the Board were erroneous since both decisions effected a substantive change to a prior final decision in contravention of the doctrine of collateral estoppel and the Special Rules of Practice and Procedure before Workers' Compensation Judges. However, this argument is premised upon a conclusion that the WCJ improperly expanded the description of Claimant's work injuries. As we determined above that the WCJ did not err in this regard, we need not address this argument further.

8. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

the consistency of the testimony of Claimant and Dr. Fried.[9]

Thus, we cannot say that the WCJ failed to issue a reasoned decision in accordance with Section 422(a) of the Act or that the Board erred in affirming the decision of the WCJ in this regard.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 14th day of December, 2007, the order of the Workers' Compensation Appeal Board is hereby affirmed.

**9.** In the course of this argument, Employer asserts that the WCJ's decision was not reasoned as he ignored several inconsistencies in the evidence. However, as the Board properly noted in its decision, such an assertion goes to the weight to be accorded the evidence, a function strictly within the province of the WCJ. *See Select Security, Inc. v. Workers' Compensation Appeal Board (Kobrin)*, 901 A.2d 1129 (Pa.Cmwlth.2006).