# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Coleman,                          :
                     Petitioner     :
                                :
            v.                       :  No. 1661 C.D. 2018
                                :  Submitted:  May 10, 2019
Workers' Compensation Appeal            :
Board (Reinhart Food Service),          :
                   Respondent     :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER               FILED:  December 19, 2019

Robert Coleman (Claimant) petitions for review of a November 28, 2018 Order of the Workers' Compensation (WC) Appeal Board (Board), which affirmed a WC Judge's (WCJ) Decision granting Reinhart Food Service's (Employer) Termination Petition and dismissing Claimant's Review Petition.  On appeal, Claimant argues that the WCJ erred in granting the Termination Petition because Employer did not meet its burden of proof through unequivocal medical testimony that Claimant was fully recovered from his work injury and that any ongoing restrictions were not related to his work injury.[1]  Because the WCJ did not credit

---

[1] Claimant also requests, in the event of a remand, that the Court direct assignment to a different WCJ.  Given our disposition, we do not address this issue.

Claimant or his expert witness but instead credited Employer's evidence that Claimant did not sustain any work-related injuries beyond those accepted in the Notice of Compensation Payable (NCP) and that Claimant had fully recovered from those injuries, there was no error in granting Employer's Termination Petition.[2]  Accordingly, we affirm.

## I.    PROCEDURAL AND FACTUAL HISTORY

Claimant worked as a shuttle driver for Employer and suffered a work-related injury on March 11, 2013, when the truck he was driving was struck by another truck.  Employer issued an NCP on March 15, 2013, accepting as injuries a sprain to the left wrist and lumbar spine.  On May 15, 2015, Employer filed a Termination Petition alleging Claimant was fully recovered from the accepted injuries based upon an independent medical examination (IME) performed by Amir Fayyazi, M.D., on February 23, 2015.  Thereafter, numerous utilization review (UR) petitions were filed related to certain treatments Claimant received after the IME.[3]  In addition, Claimant filed a Review Petition on September 24, 2015, seeking to amend the NCP to include "[l]umbrosacral strain and sprain with posttraumatic aggravation of preexisting degenerative lumbar disc disease at multiple levels.  Left wrist sprain, possible occult ligamentous injury and de Quervain's tendinitis left wrist.  Lastly, disc herniation at L3/4." (Review Petition, Reproduced Record (R.R.) at 32a.)  Employer filed a second termination petition

---

[2] Claimant has not sought review of the dismissal of the Review Petition.
[3] Five UR petitions were filed, two of which were withdrawn.  The other three were ultimately dismissed as moot by the WCJ.  The dismissal of those petitions is not being challenged.

2

on November 18, 2016, alleging full recovery as of December 7, 2015, based upon an updated IME performed by Dr. Fayyazi.[4]

### A. Proceedings before the WCJ

#### 1. Claimant's Evidence

Multiple hearings were held by the WCJ on the various petitions at which Claimant testified live as follows.[5] Claimant described the work accident and job duties for Employer. At the time he first testified in December 2015, Claimant was still unable to perform many activities of daily living and did not think he was fully recovered or able to return to his pre-injury work. He admitted to having an ongoing WC claim in New York from a previous work injury in which he broke his ankle and three toes. He denied any prior injuries to his left wrist or back but admitted to having a spinal cord stimulator implanted to address pain in his foot associated with reflex sympathetic dystrophy. At the time Claimant testified again in January 2017, he was still seeking treatment for his work injuries in the form of injections and pain patches. Claimant had undergone wrist surgery, which provided some relief, but his wrist was "still messed up." (*Id*. at 359a-60a.) Namely, Claimant complained of ongoing pain in his wrist especially in bad weather and the inability to lift too much. Claimant rated the pain in his back as a 7 or 8 out of 10. He recalled telling one of the doctors he was seeing for his New York WC injury about lower back pain a few times before the present work injury.

---

[4] The WCJ dismissed the second termination petition as moot, which neither party challenges on appeal to this Court.

[5] Claimant testified live before the WCJ at a December 21, 2015 hearing and a January 17, 2017 hearing. His testimony is summarized by the WCJ in Finding of Fact 3 and can be found in its entirety at pages 199a-240a and 357a-86a of the Reproduced Record.

3

When confronted with records from that doctor dated two weeks before the present work injury in which Claimant purportedly complained of lower back pain, Claimant testified "[i]f her records show that, no, [he] wouldn't dispute it. It's just I might have forgot [sic]." (*Id.* at 367a.) Claimant also did not remember if either of the doctors he was seeing for his New York WC injury recommended that Claimant undergo an MRI of his back. Claimant testified that his foot injury in New York is what disabled him from working at that time, not his back.

Claimant also presented the testimony of Frederick S. Lieberman, M.D., who testified as follows.[6] Dr. Lieberman is an orthopedic surgeon who was board certified until 2011. He first saw Claimant on July 27, 2015, and last saw him on September 19, 2016. Dr. Lieberman described his physical examinations of Claimant, the history he obtained from Claimant, and his review of Claimant's diagnostic studies and medical records, including some records from one of the physicians treating Claimant's New York WC injury that referenced low back pain preexisting the present work injury, as well as a report of a bone biopsy subsequently performed on the spine, which ruled out osteomyelitis or malignancy. Dr. Lieberman diagnosed Claimant with:

> a traction injury to the left upper extremity and injury to the ulnar collateral ligament of the left thumb . . . [,] a left wrist synovitis and chondromalacia of hamate and mid carpal arthritis . . . [,] ulnar neuropathy with entrapment in the forearm and some entrapment about the Guyon's canal . . . [,] a spine injury which has led to the L2-3 wedging and collapse and . . . L4 segmental spinal stenosis.

(*Id.* at 447a.)

---

[6] Dr. Lieberman's testimony is summarized by the WCJ in Finding of Fact 4 and can be found in its entirety at pages 398a-471a of the Reproduced Record.

4

Dr. Lieberman observed no significant degree of preexisting spinal degeneration and did not believe the findings in the CAT scans and x-rays were consistent with degeneration. He attributed the above injuries to the motor vehicle accident at work and opined that Claimant had not fully recovered from those injuries. Dr. Lieberman described Claimant's prognosis for his wrist as "fair," stating Claimant "may not be able to drive a heavy truck, but he may be able ultimately at some point in time to function in a modified-duty position with the wrist." (*Id.* at 449a.) In terms of Claimant's back, Dr. Lieberman believed Claimant would need decompression and stabilization surgery. According to Dr. Lieberman, Claimant was disabled from returning to his pre-injury employment by the wrist and back injuries. At the time Dr. Lieberman first examined Claimant, Claimant did not indicate that he had received prior treatment for his low back.

### 2. *Employer's Evidence*

Employer presented deposition testimony of Dr. Fayyazi, a board-certified orthopedic surgeon with an elective practice in the treatment of spinal conditions.[7] Dr. Fayyazi performed an IME of Claimant on February 23, 2015, and an updated IME on December 7, 2015, and testified as follows. Claimant denied any prior back symptoms at the initial IME. During his first examination of Claimant, Dr. Fayyazi noted Claimant had an abnormal gait, a mild limp when he walked, and refused to walk or go up on his toes or heels because Claimant said he was uncomfortable, which Dr. Fayyazi found "somewhat exaggerated." (*Id.* at 538a.)

---

[7] Dr. Fayyazi was deposed twice, once on September 16, 2015, and again on November 14, 2016. His testimony is summarized by the WCJ in Finding of Fact 2 and can be found in its entirety at pages 524a-610a and 658a-735a of the Reproduced Record.

Claimant exhibited a decreased range of motion upon examination of his lumbar spine, but Dr. Fayyazi did not believe Claimant showed any effort on exam. Dr. Fayyazi observed Claimant's lumbar spine was bowed out instead of in, and Claimant had diffused discomfort to soft touch. Claimant complained of pain upon palpation of the wrist but Dr. Fayyazi found no evidence of swelling, instability, or deformity. Dr. Fayyazi testified the objective findings were consistent with deformity of the lumbar spine and lumbar kyphosis. The remainder of the examination was normal, due to poor effort, or appeared to be nonphysiological. As for the left wrist, Dr. Fayyazi said there were no findings suggestive of an acute condition. His review of Claimant's diagnostic studies also showed no indication of traumatic injury. Dr. Fayyazi opined Claimant fully recovered from his wrist and lumbar spine injuries as of February 23, 2015. He did not believe Claimant suffered any aggravation of a preexisting condition. He attributed Claimant's existing symptomology to discitis and osteomyelitis, spinal infections which are unrelated to the work injury or trauma.

When Dr. Fayyazi reexamined Claimant in December 2015, Claimant still complained of left wrist and lower back pain. Upon examination, Dr. Fayyazi found no objective findings in the lower back or extremities, which was inconsistent with Claimant's subjective complaints of pain. Dr. Fayyazi stated his original opinion did not change and that he still believed Claimant was fully recovered and able to return to work. According to Dr. Fayyazi, Claimant's osteomyelitis has restrictions associated with it, but those restrictions are outside the scope of the work injury. In addition, Claimant's osteomyelitis was not caused or aggravated by the work injury. Dr. Fayyazi explained osteomyelitis was

6

complicated by Claimant's other health conditions that were unrelated to his work and disputed that a biopsy could rule out osteomyelitis.

In response to the new injuries alleged in the Review Petition, Dr. Fayyazi testified Claimant did not suffer aggravation of preexisting degenerative lumbar disc disorder, disc herniation, wedging and collapse, or spinal stenosis because Claimant was symptomatic before he was injured. He testified the additional alleged injuries to Claimant's left wrist were degenerative in nature, and that Claimant's left carpal tunnel and subsequent surgery on the wrist were not work-related. Dr. Fayyazi agreed that the surgery on Claimant's left wrist was medically reasonable but disputed that there was evidence of a causal relationship to the work injury. Dr. Fayyazi also disputed the alleged neck injury, stating that an EMG/nerve conduction study in 2013 showed no radiculopathy. Dr. Fayyazi reviewed the records from the physicians that Claimant saw for the New York WC injury, which, according to Dr. Fayyazi, showed Claimant experienced back pain long before the present work injury.

Employer also presented the deposition testimony of Michael L. Brooks, M.D., J.D., FCLM, a neuroradiologist, who testified as follows.[8] Dr. Brooks reviewed Claimant's lumbar x-ray from March 14, 2013, and a CAT scan of the lumbar spine from April 4, 2013, which revealed some degenerative changes but nothing traumatic. He also observed no evidence of osteomyelitis. When he reviewed a March 4, 2014 lumbar CAT scan, Dr. Brooks observed some endplate destruction, which was new, at L2-3, along with narrowing of disc space. According to Dr. Brooks, this was consistent with an infection, such as discitis or

_____

[8] Given the WCJ's disposition, the WCJ did not address the testimony of Dr. Brooks, which can be found in its entirety at pages 899a-950a of the Reproduced Record.

7

osteomyelitis. Based upon the prior study, Dr. Brooks did not attribute the discitis or osteomyelitis to the motor vehicle accident at work because there was no evidence of fracture or bone destruction. A subsequent lumbar CAT scan on February 4, 2015, showed additional endplate destruction and collapse. A lumbar x-ray taken September 15, 2016, showed the evolution of infection with the bones fusing together. Dr. Brooks noted no evidence of trauma or aggravation from the work accident and that any changes were degenerative in nature and not work-related. He was not aware that Claimant underwent lumbar epidurals in 2013, but Dr. Brooks stated that, this would not change his opinion, even though he acknowledged insertion of a needle into the spine could lead to infection. He explained that the negative biopsy results could be attributable to delay in performing the biopsy. Given Claimant's other health conditions that were not work-related, Dr. Brooks also opined that another etiology of the infection could be aseptic necrosis. Dr. Brooks said he could not give an opinion regarding osteomyelitis to a reasonable degree of medical certainty because there was no positive bacterial culture. However, according to Dr. Brooks, "that in no way change[d his] opinions, that L2-3 findings have absolutely nothing to do with the work-related motor vehicle accident." (*Id*. at 940a.) Dr. Brooks agreed that a motor-vehicle accident could cause or aggravate arthritis but stated there was no evidence of any change.

8

### 3. WCJ's Decision

Based upon the above testimony, the WCJ granted Employer's Termination petition and dismissed Claimant's Review Petition.[9]  In doing so, the WCJ found "Claimant's live testimony not credible."  (WCJ Decision, Finding of Fact (FOF) ¶ 5.)  The WCJ also did not credit the testimony of Dr. Lieberman, explaining Dr. Lieberman first examined Claimant more than two years after the work accident. (*Id.* ¶ 6.)  In addition, the WCJ noted that Dr. Lieberman lacked information about Claimant's past treatment for his back, which the WCJ found was "a purposeful attempt" by Claimant to keep that information from Dr. Lieberman.  (*Id.*)  Thus, the WCJ found Dr. Lieberman's testimony was "taint[ed]" in its entirety.  (*Id.*) Because Dr. Fayyazi had all records and information related to Claimant's current injury, as well as his past treatment and complaints of low back pain, the WCJ credited Dr. Fayyazi's testimony.  (*Id.* ¶ 7.)  The WCJ also found Dr. Fayyazi conducted a thorough examination and gave detailed explanations to support his opinions.  (*Id.*)  Because of these credibility determinations, the WCJ found it was unnecessary to address Dr. Fayyazi's second deposition or the deposition of Dr. Brooks.  (*Id.* ¶ 8.)  Based upon Dr. Fayyazi's first deposition, the WCJ concluded Employer met its burden of showing Claimant fully recovered from his work injuries as of February 23, 2015. (WCJ Decision, Conclusion of Law ¶ 4.)  In addition, based upon the WCJ's credibility determinations, the WCJ concluded the Review Petition should be dismissed.  (*Id.* ¶ 6.)

---

[9] As noted above, the WCJ also dismissed a second termination petition filed by Employer and the UR review petitions as moot.

**B. Board Opinion and Order**

Claimant and Employer cross-appealed to the Board, which affirmed. The Board rejected Claimant's argument that Employer presented equivocal evidence in support of its Termination Petition. The Board recapped the evidence presented by both parties and the credibility determinations made by the WCJ and concluded Employer met its burden of showing Claimant was fully recovered and able to return to work without restrictions. The Board further rejected Claimant's argument that *Visteon Systems v. Workers' Compensation Appeal Board (Steglik)*, 938 A.2d 547 (Pa. Cmwlth. 2007), required Employer to prove his ongoing back impairment was caused by an independent condition unrelated to the work injury. "To the extent that *Visteon Systems* remains viable," the Board held, "the WCJ accepted Dr. Fayyazi's testimony attributing Claimant's current symptoms to osteomyelitis/discitis." (Board Opinion at 11.) The Board explained that it was Claimant's burden to show he suffered consequential injuries as alleged in the Review Petition:

> Claimant's arguments overlook the WCJ's dismissal of his Review Petition. Accordingly, the description of injury remained left wrist and lower back strains, as accepted by the NCP. [Employer] had the burden of proving that Claimant is fully recovered and can return to work without restrictions referable to those injuries. . . . Dr. Fayyazi testified that Claimant had fully recovered from the accepted injuries and can return to work without restrictions referable to those injuries. Dr. Fayyazi's testimony, found to be credible by the WCJ, met [Employer]'s burden in support of termination.

10

(*Id.* at 11-12.)   Determining no error, the Board affirmed.   Claimant now seeks review by this Court.[10]

## II.    PARTIES' ARGUMENTS

### A.    Claimant's Arguments

Claimant argues the Board's Order affirming the WCJ's Decision should be reversed because Employer failed to meet its burden of showing an independent cause for Claimant's injuries that were in the same part of the body as the accepted injuries, as required by *Visteon Systems*.   To meet its burden, Claimant argues Employer must present unequivocal medical testimony, which Employer did not do.   Related to Claimant's lumbar spine injury, Claimant asserts he underwent epidural injections, which caused an infection, such as osteomyelitis or discitis. Claimant asserts that treatments of work injuries that cause new injuries or aggravate existing conditions are compensable as being caused by the work injury. According to Claimant, Employer's experts attributed Claimant's ongoing disability to the spinal infection but did not offer unequivocal evidence of an independent cause for that infection.   Instead, Claimant argues, Employer's expert, Dr. Fayyazi, testified that, in most cases, the cause of such a spinal infection is unknown.   Employer's other expert, Dr. Brooks, Claimant asserts, testified that

---

[10] Our review is limited to whether constitutional rights were violated, errors of law were committed, or necessary findings of fact are supported by substantial evidence.  *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support the conclusion."  *Wells–Moore v. Workmen's Comp. Appeal Bd. (McNeil Consumer Prods. Co.*), 601 A.2d 879, 881 (Pa. Cmwlth. 1992).  Furthermore, when considering whether the WCJ's findings are supported by substantial evidence, we must consider "the evidence in a light most favorable to the party [that] prevailed before the [WCJ]."  *Brewer v. Workers' Comp. Appeal Bd. (EZ Payroll & Staffing Sols.*), 63 A.3d 843, 848 (Pa. Cmwlth. 2013).

11

spinal injections could cause an infection. Claimant also argues that the WCJ erred in finding the testimony of Dr. Brooks related only to the Review Petition and in not considering it because the various petitions were consolidated for consideration. Claimant argues Employer's evidence was equivocal and asks this Court to reverse the Board's Order, or alternatively, to vacate and remand for a different WCJ to resolve the conflict in the testimony of Dr. Fayyazi and Dr. Brooks related to the cause of the infection.

As for Claimant's left wrist injury, Claimant asserts Employer's expert testified Claimant was fully recovered because there were no symptoms present but offered no opinion on Claimant's post-surgical condition because, at the time of Dr. Fayyazi's testimony, Claimant had not yet undergone surgery on his wrist. Claimant also points out that Dr. Fayyazi acknowledged that the scheduled surgery was medically reasonable. As with his spinal injuries, Claimant asserts Employer's experts proffered no independent cause for Claimant's wrist injuries.

Finally, in the event of remand, Claimant argues the Court should direct the matter be assigned to a different WCJ because the WCJ who presided over the petitions demonstrated clear bias. In support thereof, Claimant points to the WCJ's finding that Claimant purposefully concealed his past medical records, when, in fact, he authorized their release.

### B.    Employer's Arguments

Employer responds that Claimant's arguments go to credibility and weight of the evidence, both of which are within the exclusive province of the WCJ. It asserts Dr. Fayyazi's testimony supports the WCJ's findings. There is also evidence, Employer asserts, of prior back injuries, which Claimant denied.

12

Employer argues the WCJ did not credit Claimant's testimony or that of Dr. Lieberman, which was within the WCJ's authority to do. Employer further asserts that the WCJ did not err in not considering the testimony of Dr. Brooks because he was a rebuttal witness who only reviewed films.

To succeed on its Termination Petition, Employer argues it could show either an independent cause for the disability or the lack of a causal connection between the current disability and the work injury, citing *Metropolitan Ambulance, Inc. v. Workers' Compensation Appeal Board (Walker)*, 702 A.2d 881 (Pa. Cmwlth. 1997). Employer argues *Visteon Systems*, upon which Claimant relies, is not inconsistent with *Metropolitan Ambulance* in that they both require an employer to show the lack of a causal relation between a work injury and another injury in the same area of the body as the accepted work injury. Here, Employer argues the osteomyelitis/discitis that is alleged was a separate injury, and therefore, the burden of proving it was work-related was not on Employer, but on Claimant, as part of the Review Petition. Even if it had the burden of proof, Employer argues it would have been met by the evidence Employer presented. Employer denies that it must show a specific, identifiable non-work-related cause and that Dr. Fayyazi's testimony was equivocal.

In addition, Employer argues the Termination Petition was properly granted because Dr. Fayyazi clearly testified that Claimant was fully recovered from the accepted wrist injury. According to Employer, the mere fact that Dr. Fayyazi acknowledged the wrist surgery was medically necessary does not equate to a finding that it was causally related to the original work injury.

Finally, Employer denies that Claimant has shown the actual prejudice necessary to warrant a change in WCJs if the matter is remanded. Employer notes

13

that the WCJ did not blame Claimant for the inability to obtain out-of-state records, but merely noted inconsistencies in what Claimant disclosed to his physicians about his prior back issues. Employer asks the Court to affirm the Board's Order.

## III. ANALYSIS

To obtain a termination of benefits, an employer bears the burden to prove "that the claimant fully recovered from his work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402 n.13 (Pa. Cmwlth. 2015). An employer meets this burden when its "expert unequivocally testifies that it is [the expert's] opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which . . . substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Claimant argues, based upon this Court's decision in *Visteon Systems*, that because he is alleging disability based upon injuries in the same area of the body as the accepted injuries, the burden was on Employer to show an independent cause for the same, which Employer did not do. In *Visteon Systems*, a claimant suffered an injury to her left shoulder and upper back. After being out of work for several months, the claimant returned to work but her symptoms worsened. The claimant and her employer entered into a supplemental agreement acknowledging the claimant suffered "a left shoulder sprain/strain as a result of repetitive use." *Visteon Systems*, 938 A.2d at 548. She again returned to work but her right

14

shoulder became symptomatic. When the employer refused to pay the claimant's medical bills, she filed a claim petition alleging chronic myofascial pain, bilateral shoulder strain, and cervical sprain as a result of repetitive work. The employer filed a termination petition asserting the claimant fully recovered from the left shoulder sprain/strain accepted in the supplemental agreement. Following hearings, the WCJ granted the claim petition, finding the claimant suffered from "chronic cervical sprain and strain, cervical spondylosis and a tendonopathy of the paraspinal tendon of the left shoulder," and denied the termination petition, concluding the employer did not meet its burden of proof by showing full recovery. *Id.* at 549. Neither party appealed this determination.

Shortly thereafter, the claimant underwent an IME, upon which the employer filed another termination petition. Following hearings, the WCJ denied the petition, again concluding the employer did not prove the claimant had fully recovered from her work injuries. The employer appealed to the Board, which affirmed. On appeal to this Court, the employer argued the WCJ wrongly placed the burden on the employer to show the claimant recovered from injuries that had not been accepted and that the WCJ expanded the work injuries without requiring the claimant to file a review petition. We explained that an employer bears the burden of proving a disability has ceased or is unrelated to the work injury. *Id.* at 551. We further stated that "in the course of defending against a termination petition, when a claimant alleges a new and distinct physical injury . . . not contemplated by the original agreement or award of compensation, the burden rests with the claimant to establish that this new injury/condition was work-related." *Id.* at 552. The Court continued that "where the claimant's ongoing disability is related to an injury or condition which is of a very similar nature and/or affects the

15

same body parts which have been recognized as compensable, then the burden remains with an employer to establish an independent cause for the same." *Id.* (citing *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 626 A.2d 94 (Pa. 1993), and *Beissel v. Workmen's Comp. Appeal Bd. (John Wanamaker, Inc.)*, 465 A.2d 969 (Pa. 1983)). It is this language that Claimant argues supports his claim that the WCJ, and subsequently the Board, improperly placed the burden on Claimant instead of Employer.

As this Court explained in *Harrison v. Workers' Compensation Appeal Board (Auto Truck Transport Corp.)*, 78 A.3d 699, 705 (Pa. Cmwlth. 2013), the Supreme Court has since narrowed the holding of *Gumro*, one of the cases upon which *Visteon Systems* was based. In *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 n.9 (Pa. 2009), which was decided two years after *Visteon Systems*, the Supreme Court "decline[d] to disturb" this Court's decision that an alleged herniated disc is a separate injury from a lumbar strain/sprain, which was the accepted injury. Because the disc herniation was separate from the accepted injury, "the burden rest[ed] with [the] claimant[] to establish the existence of additional compensable injuries giving rise to corrective amendments, regardless of the procedural context in which the amendments are asserted." *Id.* at 582.

In *Harrison*, this Court faced a similar argument to the one that Claimant makes here, that because the alleged additional work injuries were in the same area of the body as the injuries accepted in the NCP, the burden should be on the employer to prove they are not work-related. In that case, the claimant suffered a right ankle sprain, which was accepted via an NCP. The employer sought to terminate the claimant's benefits based upon full recovery. The claimant filed a

16

review petition seeking to amend the NCP to include additional injuries to the right ankle and foot, as well as a broken leg, he claimed was caused by the original work injury. The WCJ credited the testimony of the employer's experts that the claimant had fully recovered and that other issues with the claimant's foot, ankle, and leg were congenital in nature. Thus, the WCJ granted the termination petition and denied the review petition, a decision that was affirmed by the Board. *Harrison*, 78 A.3d at 701-02.

On appeal to this Court, the claimant argued, in relevant part, that the Board erred in placing the burden on the claimant because the alleged additional injuries were in the same part of the body as the accepted injury. We reviewed *Gumro*, upon which the claimant relied, and explained how *Cinram Manufacturing* "clarified" *Gumro*. *Harrison*, 78 A.3d at 705. We reiterated that "*Cinram Manufacturing* squarely places the burden of proving additional injuries upon the claimant," which the "[c]laimant understood . . . , which is why he filed a review petition." *Harrison*, 78 A.3d at 705. We stated that the employer did not bear the burden of showing the other foot and ankle problems were not work-related. *Id.* Even if it did, we concluded that the employer's evidence would have met that burden because the WCJ accepted the testimony of the employer's expert that the claimant was fully recovered from the accepted ankle sprain and the other conditions were congenital in nature, not work-related. *Id.* Accordingly, we affirmed the Board's order, upholding the WCJ's decision granting the termination petition. *Id.* at 705-06.

Based upon the above precedent, we disagree with Claimant that Employer had the burden to show all of the injuries, accepted and alleged, were not work-related or that there was an independent cause for same. The additional injuries

17

Claimant alleged in his Review Petition, "[l]umbrosacral strain and sprain with posttraumatic degenerative lumbar disc disease at multiple levels. Left wrist sprain, possible occult ligamentous injury and de Quervain's tendinitis left wrist. Lastly, disc herniation at L3/4," (R.R. at 32a), were separate from the injuries Employer accepted in the NCP, "left wrist, lumbar spine sprain." (*Id.* at 1016a.) As in *Harrison*, this is why Claimant filed a separate Review Petition.[11] 73 A.3d at 705.

Here, Employer presented the testimony of Dr. Fayyazi, who testified that, to a reasonable degree of medical certainty, based on his review of Claimant's medical history and his physical examination of Claimant, Claimant had fully recovered from his work injuries as of the time of the first IME. Dr. Fayyazi testified that in the course of his physical examination of Claimant, he found Claimant refused to go up on his toes or heels, which Dr. Fayyazi testified was "somewhat exaggerated." (R.R. at 538a; FOF ¶ 2.d.) In addition, Dr. Fayyazi noted Claimant put forth no effort when testing Claimant's lumbar range of motion. (R.R. at 539a-40a, 542a; FOF ¶ 2.f.) Claimant complained of pain upon palpation of the left wrist but Dr. Fayyazi found no evidence of swelling, instability, or deformity. (R.R. at 543a; FOF ¶ 2.g.) Dr. Fayyazi found nothing during his examination to support Claimant's subjective complaints of pain. (FOF

---

[11] Had Claimant been asserting that his diagnosis changed instead of alleging entirely new injuries, Claimant would not necessarily have been required to file a review petition. In *Body Shop v. Workers' Compensation Appeal Board (Schanz)*, 720 A.2d 795, 799 (Pa. Cmwlth. 1998), although the NCP described an injury as an acute low back strain, further diagnostic studies subsequently changed the diagnosis to a herniated disc. We held that "[b]ecause the diagnosis of a herniated disc does not constitute a separate injury but is just another diagnosis of the initial injury," the claimant's original notice was sufficient to describe the injury to the claimant's back. *Id.* Here, it is not merely a change in diagnoses; Claimant is alleging additional, new and separate injuries.

18

¶ 2.h.) *See also Udvari*, 705 A.2d at 1293 (noting that the employer can meet its burden of proof on a termination petition by showing that there are no objective medical findings to substantiate the subjective complaints of pain). Thus, Employer established, through this credited testimony, that Claimant fully recovered from the accepted work injuries.

Contrary to Claimant's contention, Employer did not have to present proof of an independent cause of Claimant's subjective complaints of pain. *See Saville v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.)*, 756 A.2d 1214, 1219 (Pa. Cmwlth. 2000) (stating that the employer meets its burden on a termination petition when it "show[s] a lack of a causal connection between any currently existing disability and the work-related injury"); *see also Szczepanski v. Workers' Comp. Appeal Bd. (Leggett & Platt)* (Pa. Cmwlth., No. 1909 C.D. 2011, filed May 10, 2012), slip op. at 9-12 (rejecting the claimant's argument that the employer had the burden of explaining the reasons why the claimant continued to suffer pain, and cited *Udvari* in support).[12] To meet its burden of proof, Employer had to show that there were no objective medical findings to connect Claimant's subjective complaints of pain with the work injury. *Udvari*, 705 A.2d at 1294 (recounting that the employer's medical expert suggested that the cause of the claimant's continued complaints of pain was that she was embellishing her symptoms). Employer did this through Dr. Fayyazi's credited testimony.

The WCJ's factual findings and credibility determinations are key. Here, the WCJ rejected Claimant's testimony and that of his expert, Dr. Lieberman, choosing instead to credit the testimony of Dr. Fayyazi. The WCJ provided

---

[12] *Szczepanski* is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

objective bases for these credibility determinations. Specifically, the WCJ found Dr. Fayyazi's testimony was "the only expert medical testimony based on all the records and information regarding Claimant's injury and *the past treatment and complaints of low back pain before the instant work injury*." (FOF ¶ 7 (emphasis in original).) In addition, the WCJ found Dr. Fayyazi's examinations thorough and the explanations supporting his opinions detailed. (*Id.*) In contrast, the WCJ did not find Dr. Lieberman's testimony credible because Claimant did not disclose his past medical treatment for his low back to Dr. Lieberman and Dr. Lieberman did not examine Claimant for more than two years after the accident. (*Id.* ¶ 6.)

Claimant requests this Court to reweigh the evidence and find in his favor. However, it is well-settled that the WCJ is the fact finder, and the review of the witnesses' testimony and determinations as to the weight and credibility of that evidence are solely for the WCJ. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. & Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992).

Claimant argues Dr. Fayyazi's testimony was equivocal, especially when considered in conjunction with the testimony of Dr. Brooks. We disagree. Medical testimony is "equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (quotation omitted). The medical expert's testimony must be reviewed "as a whole[,] and [we] may not base our analysis on a few words taken out of context." *Id.* Furthermore, "[t]here are no magic words

20

that a doctor must recite to establish causation." *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "There is no requirement that every utterance that escapes the lips of a medical witness . . . must be certain, positive, and without reservation, exception, or paradventure of a doubt in order to be considered unequivocal." *Id.* "[I]f a medical expert testifie[d], after providing foundation for the testimony, that, in [the expert's] professional opinion, [the expert] believes or thinks a fact exists," the testimony is unequivocal. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011). The "mere offering of alternative analyses with respect to a work-related injury does not render the expert's testimony equivocal." *Manitowoc Co., Inc. v. Workers' Comp. Appeal Bd. (Cowan)*, 74 A.3d 1137, 1142 (Pa. Cmwlth. 2013). Nor is an expert required to "rule out with absolute certainty other factors that may have caused or contributed to a condition." *Campbell*, 954 A.2d at 730.

Dr. Fayyazi testified unequivocally that Claimant is fully recovered from the accepted work injuries and explained why he felt this way. (R.R. at 555a-58a.) He testified:

> With respect to the wrist, there's clear indication that the hand surgeon that was treating him released him to full duty and he was recovered. At the time of my examination, despite objective evidence of wrist degeneration and loss of full range of motion, there was no indication of symptomatology associated with the wrist, and there was no indication suggestive of persistent symptomatology with respect to the wrist. So the wrist is clearly recovered.

(*Id.* at 556a.)

Claimant argues Dr. Fayyazi could not make this determination because at the time, Claimant had not yet undergone wrist surgery. He further argues that Dr.

21

Fayyazi admitted the surgery was medically necessary. Claimant's argument is misplaced. Dr. Fayyazi could opine, based upon his examination and review of the medical records, that Claimant was fully recovered from the wrist injury at the time of the February 2015 IME. The fact that Claimant subsequently underwent surgery to that wrist in February 2016 does not mean he was not fully recovered in February 2015, particularly when Dr. Fayyazi does not believe the surgery was causally related to the work injury. (*Id.* at 694a.) Likewise, Dr. Fayyazi's opinion that the wrist surgery was medically indicated does not equate to a finding that the surgery was causally connected to the accepted work injury. In his deposition following the second IME, Dr. Fayyazi expressly disclaims that the surgery was causally related. (*Id.*) Dr. Fayyazi disagreed with Dr. Lieberman's diagnoses related to Claimant's left wrist and explained why he disagreed and why, in his opinion, they were not work-related. (*Id.* at 692a-95a.) Because the WCJ credited Dr. Fayyazi's testimony from the first deposition that Claimant was fully recovered from the wrist injury, he did not need to examine Dr. Fayyazi's testimony from the second deposition, which reaffirmed his original opinions.

Similarly, Dr. Fayyazi unequivocally testified that Claimant was fully recovered from the lumbar spine injury. He testified:

> Looking at the medical records and the additional diagnostic studies, there are indications of other findings that are clearly affecting [Claimant] at this time that would be in no way related to this injury, the injury from 2013. And based on the available records and my physical examination, I feel that [Claimant] has recovered from [the] lumbar sprain and strain injury.

(*Id.* at 556a-57a.)

He further opined that any physical restrictions Claimant may have based upon findings in a recent CAT scan "would not be related to the work injury" and

22

would be "independent of the work injury." (*Id.* at 557a.) Dr. Fayyazi also unequivocally testified that Claimant's injuries were not aggravation injuries, meaning they did not aggravate any preexisting problems Claimant had to either his back or wrist. (*Id.* at 558a-59a.)[13]

Claimant asserts that Dr. Fayyazi's testimony is equivocal in that he does not identify the cause of the spinal infection. Specifically, Claimant points to Dr. Fayyazi's testimony at his second deposition when Dr. Fayyazi states that with "[m]ost individuals, we don't even know what the route [sic] is that causes the osteomyelitis." (*Id.* at 688a.) Claimant ignores the remainder of Dr. Fayyazi's testimony. *Amandeo*, 37 A.3d at 80 (holding a medical expert's testimony must be reviewed "as a whole[,] and [we] may not base our analysis on a few words taken out of context"). Dr. Fayyazi testified the "osteomyelitis probably was even more complicated given" Claimant's other non-work-related medical conditions, which put Claimant at a high risk of osteomyelitis. (R.R. at 683a, 688a.) Dr. Fayyazi was firm in his opinion that osteomyelitis was in no way related to Claimant's work injury or accident.

Claimant also argues that the testimony of Dr. Brooks was crucial because it showed a connection between Claimant's work injury and the spinal infection and the WCJ erred in not considering it. Even if it was error for the WCJ not to address the testimony of Dr. Brooks, it does not establish a causal connection. The testimony of Dr. Brooks confirms there was endplate destruction and narrowing of disc space at L2-3, which is consistent with a finding of infection, such as discitis or osteomyelitis. (*Id.* at 916a-18a.) Dr. Brooks, however, testified that the

---

[13] Dr. Fayyazi expressed the same opinions at his second deposition. (R.R. at 680a-82a, 687a-88a.)

infection would not have been caused or aggravated by the work accident or accepted injury. (*Id.* at 918a.) Although Dr. Brooks acknowledged that he was unaware that Claimant underwent lumbar epidurals and that a needle injected into a spine can lead to the development of a spinal infection, he testified it would not change any of his opinions. (*Id.* at 929a-30a.) Dr. Brooks went on to testify that he "didn't say [epidurals] could have caused" osteomyelitis. (*Id.* at 938a (quotations omitted).) Rather, "[he] said any invasive procedure in the spine can lead to infection. That's one of the potential complications from doing an invasive procedure of the spine, such as needle placement and such." (*Id.*) Dr. Brooks further explained a patient's underlying health issues, such as those Claimant had, was another factor. (*Id.*)

Therefore, we discern no error in the Board affirming the WCJ's Decision granting the Termination Petition based upon the credited and unequivocal testimony of Dr. Fayyazi that Claimant had fully recovered from the accepted work injuries.[14]

## IV. CONCLUSION

In summary, Dr. Fayyazi unequivocally testified that Claimant had fully recovered from the work-related injuries accepted in the NCP. The WCJ accepted this testimony as credible. Therefore, Employer met its burden of proof on the Termination Petition through this credited testimony. To the extent Claimant asserts Dr. Fayyazi had to offer an opinion that he was fully recovered from the additional alleged injuries, which were separate from the accepted injuries, his

---

[14] As stated above, because we affirm, we do not address Claimant's argument that this matter should be remanded to a different WCJ.

24

assertion is premised on Claimant's Review Petition being granted, which it was not.[15]  Nor did Employer have to show an independent cause for the additional alleged injuries because they were separate from the accepted ones.  Regardless, Dr. Fayyazi's testimony established they were not causally connected to the work injury.  Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[15] A claimant may seek to amend the description of an injury in an NCP by filing a review petition and by meeting his burden of proving that he suffered additional injuries "as a result of the work-related . . . injury for which [the] employer accepted liability." *Commercial Credit Claims v. Workmen's Comp. Appeal Bd. (Lancaster)*, 728 A.2d 902, 906 (Pa. 1999).  This burden is the same as if the claimant had filed an original claim petition. *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Korach)*, 883 A.2d 579, 592 (Pa. 2005).  Where the causal connection between the injury and employment is not obvious, the claimant must present credible, unequivocal medical evidence establishing causation. *Gribble v. Workers' Comp. Appeal Bd. (Cambria Cty. Ass'n for the Blind)*, 692 A.2d 1160, 1163 (Pa. Cmwlth. 1997).  Here, the WCJ rejected Dr. Lieberman's testimony as not credible.  Thus, Claimant did not meet his burden in relation to the Review Petition.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Coleman,                                    :
                              Petitioner           :
                                                   :
            v.                                     :   No. 1661 C.D. 2018
                                                   :
Workers' Compensation Appeal                       :
Board (Reinhart Food Service),                     :
                              Respondent           :

## **O R D E R**

**NOW**, December 19, 2019, the Order of the Workers' Compensation Appeal Board dated November 28, 2018, is **AFFIRMED.**

 

 

 

_____
**RENÉE COHN JUBELIRER,** Judge