**Randall HARRISON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AUTO TRUCK TRANSPORT CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 2, 2013.

Decided Oct. 2, 2013.

As Amended Oct. 23, 2013.

Reargument Denied Nov. 27, 2013.

Kurt J. Kwak, Wilkes–Barre, for petitioner.

Cal A. Leventhal, Honesdale, for respondent Auto Truck Transport Corp.

BEFORE: COHN JUBELIRER, Judge and LEAVITT, Judge and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Randall Harrison (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying his request to expand the list of his compensable work injuries and terminating his workers' compensation benefits. In doing so, the Board affirmed the Workers' Compensation Judge's (WCJ) determination that Claimant had fully recovered from the accepted work injury and that the medical problems identified by Claimant in his review petition were not work-related. Claimant argues that the Board erred because his recognized work injury was expanded during a proceeding that established his impairment rating, and he has not recovered from those additional injuries. Discerning no merit to Claimant's contentions, we affirm.

■ Claimant worked for Auto Truck Transport Corp. (Employer) as a truck driver. On May 9, 2008, Claimant slipped while standing on top of a truck tire, and his right ankle became lodged between the tires. Employer issued a Notice of Compensation Payable (NCP) describing the work injury as a right ankle sprain and paying total disability benefits.

On August 25, 2010, Lucian Bednarz, M.D. performed an impairment rating

evaluation (IRE) and assigned Claimant a 13% whole body impairment rating. On this basis, Employer filed a modification petition to change Claimant's disability status from total to partial. On October 11, 2010, Michael Raklewicz, M.D., performed an independent medical examination (IME) and found Claimant to be fully recovered from his ankle sprain. Employer then filed a petition to terminate benefits. Claimant filed answers denying the allegations in both petitions.

Claimant also filed a petition to review compensation benefits, seeking to amend the injury description in the NCP to include the additional right ankle and foot conditions described by Dr. Bednarz in his IRE report. Finally, Claimant sought to add a broken leg he later sustained, which he believed to be caused by his original work injury. Employer denied these allegations.

The petitions of Employer and Claimant were consolidated and the matter assigned to a WCJ.[1] At the hearings, both parties appeared and presented evidence.

Claimant testified that his work injury made his ankle painful and swollen, and the pain continued despite physical therapy and surgery. Claimant explained that he was able to ride his motorcycle to his medical appointments in the months after his ankle sprain but could not do so after his surgery. In July 2010, Claimant fell down stairs at his home, breaking his leg and injuring his knee. Claimant attributed this fall to stability problems with his right ankle. Claimant testified that he continues to suffer severe pain in his right ankle and knee.

Claimant presented the deposition testimony of Barry Bernstein, DPM, his treating podiatrist since March 2009. Claimant initially presented with extreme right lower extremity pain. Based on his examination of Claimant, a review of medical records from prior treating physicians and radiographic testing, Dr. Bernstein diagnosed Claimant with flat foot deformity; a nerve entrapment in the ankle; and a fracture fragment in the rear of the ankle. Dr. Bernstein attributed these diagnoses to the work incident except for the flat foot condition, which was pre-existing. Dr. Bernstein did surgery on the right foot and ankle in October 2009. After this surgery, Claimant's pain increased. Dr. Bernstein stated it was possible that Claimant's pain caused him to fall and break his leg. Dr. Bernstein opined that Claimant has not fully recovered from his work injury, as evidenced by his residual pain, and cannot return to his truck driver job.

In support of its position, Employer presented the deposition testimony of Dr. Bednarz. The Department of Labor and Industry assigned Dr. Bednarz to do an IRE evaluation of Claimant on August 25, 2010. Because Dr. Bednarz was asked to evaluate Claimant's right ankle and foot, the doctor took into account two diagnoses: (1) Claimant's ankle sprain and (2) Claimant's preexisting flat foot deformity, which was treated by Dr. Bernstein's surgery. Using the AMA Guides, Dr. Bednarz concluded that Claimant had a 13% whole body impairment. Dr. Bednarz testified that he could not assign a rating for the ankle sprain because Claimant had no residual problems from that injury. Claimant's impairment rating was wholly attributable to the after-effects of the surgery for his pre-existing, congenital flat foot condition.

Employer also submitted the deposition testimony of Dr. Raklewicz, a board certi-

---

1. Claimant also filed a penalty petition relating to attorney's fees, but failed to present any evidence of a violation. The WCJ denied this petition and it is not at issue on appeal.

fied orthopedic surgeon who performed an IME on October 11, 2010. Dr. Raklewicz reviewed medical records of Claimant's various treating physicians and radiographic test results. An MRI taken shortly after the work injury showed a minor ankle sprain, which was the diagnosis made by Claimant's original treating physician, Dr. Kim. Dr. Raklewicz opined that this diagnosis was borne out by Claimant's ability to ride his motorcycle after the injury. A bone scan showed a pre-existing congenital condition of bilateral flat feet, which caused bilateral ankle degeneration. Dr. Raklewicz testified that Dr. Bernstein's surgery was done to treat Claimant's flat feet, not his ankle sprain. Dr. Raklewicz opined that Claimant had fully recovered from the ankle sprain and that his remaining ankle and foot problems were attributable to Claimant's congenital flat foot condition, with associated ankle degeneration. The leg and knee injuries sustained in Claimant's fall down the stairs were sequelae of Claimant's congenital foot condition, not his work injury.

The WCJ credited Dr. Bednarz's 13% impairment rating because it was not rebutted by Claimant. The WCJ granted Employer's modification petition, concluding that Employer proved through Dr. Bednarz's testimony that Claimant's disability status should be modified as of August 25, 2010.

■ The WCJ credited the testimony of Dr. Raklewicz because it was corroborated by the MRI performed shortly after the injury and by the opinion of initial treating physician Dr. Kim.[2] The WCJ found that Claimant fully recovered from the ankle sprain work injury and that his other foot, ankle and leg problems were attributable to a congenital condition, not the work injury. The WCJ concluded that Employer met its burden of proving full recovery and terminated disability benefits as of October 11, 2010. The WCJ denied Claimant's review petition, concluding that Claimant failed to prove that he had sustained any additional work injuries besides the ankle sprain.

■ Claimant appealed, and the Board affirmed. Claimant now petitions for this Court's review.[3]

■ On appeal, Claimant argues that the Board erred. Specifically, Claimant argues that Dr. Bednarz's IRE report established that his "compensable injury" was more than an ankle sprain, a critical fact overlooked by the Board. Claimant asserts that, accordingly, Dr. Raklewicz's testimony was not competent to support a termination of benefits because he limited his opinion to the work injury described in the NCP.[4] Claimant also argues that the Board erroneously saddled him with the burden of establishing additional work injuries when the burden should have been placed on Employer to prove that his ankle and foot problems were not work injuries.

---

2. The WCJ is the ultimate fact finder and has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa.Cmwlth.1995).

3. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

4. A medical expert's opinion is incompetent if it is based on an assumption that is contrary to the established facts of record. *Taylor v. Workers' Compensation Appeal Board (Servistar Corp.)*, 883 A.2d 710, 713 (Pa.Cmwlth. 2005).

■ An employer meets its burden in a termination proceeding by presenting competent medical evidence of the claimant's full recovery from the work injury. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa. Cmwlth. 253, 595 A.2d 697, 699 (1991). The NCP establishes the description of the work injury and the employer must establish full recovery from the injury or injuries listed there. *City of Philadelphia v. Workers' Compensation Appeal Board (Butler)*, 24 A.3d 1120, 1124 (Pa.Cmwlth. 2011).

■ Under Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 771, the WCJ may amend the NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is different or more expansive than that listed in the NCP.[5] *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 601 Pa. 524, 530–31, 975 A.2d 577, 580–81 (2009). This is known as a "corrective amendment." *Id.* In addition, the NCP can be amended if the claimant files a review petition and proves that another injury subsequently arose as a conse-

quence of the original injury. *Id.* at 531, 975 A.2d at 581. The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856 n. 4 (Pa.Cmwlth.2011).

Claimant argues that Dr. Bednarz's IRE altered the burden of proof in both petitions and placed that burden on Employer. He argues that the IRE established that Claimant's post-surgery problems were work-related. Accordingly, he did not have to prove that the injuries that resulted in a 13% impairment were work-related. It also follows that Employer had to prove he was fully recovered from the injuries included in the 13% impairment rating.

Section 306(a.2)(1) of the Act provides that after a claimant has been on total disability for 104 weeks, the employer can request an IRE "to determine the degree of impairment *due to the compensable injury,* if any." 77 P.S. § 511.2(1) (emphasis added).[6] "Impairment" is defined in Section 306(a.2)(8)(i) as "an anatomic or functional abnormality or loss that results from *the compensable injury* [.]" 77 P.S. § 511.2(8)(i) (emphasis added). Section

5. Section 413(a) states, in relevant part, as follows:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement ... if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

6. Section 306(a.2) was added by the Act of June 24, 1996, P.L. 350. Section 306(a.2)(1) states as follows:

> When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be

required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1).

306(a.2)(8)(ii) specifies that "impairment rating" means "the percentage of permanent impairment of the whole body resulting from *the compensable injury*" only and is not to include "any preexisting work-related or nonwork-related impairment." 77 P.S. § 511.2(8)(ii) (emphasis added). If the IRE results in an impairment rating of less than 50%, the claimant's disability status can be changed from total to partial. 77 P.S. § 511.2(2). The change in status means that the claimant continues to receive benefits at the total disability rate, but his benefits will end after 500 weeks. *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 972 A.2d 100, 104–105 (Pa.Cmwlth. 2009), *affirmed*, 607 Pa. 254, 5 A.3d 230 (2010).

■ The IRE is undertaken to determine whether the claimant has any impairment attributable to the work injury. It is separate and distinct from an IME, which is undertaken to determine the claimant's level of disability, *i.e.*, his ability to perform his pre-injury job, or whether the claimant has fully recovered. *See Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926 A.2d 1236, 1240 (Pa.Cmwlth.2007). Accordingly, the finding in an IRE of a permanent impairment does not bar an employer from pursuing a termination of benefits. *Schachter v. Workers' Compensation Appeal Board (SPS Technologies)*, 910 A.2d 742, 746 (Pa.Cmwlth.2006).

Claimant posits that by using the term "compensable injury" in Section 306(a.2), the legislature intended that an IRE medical expert's opinion defines the work injury and is binding for all purposes under the Act. It is true that Section 306(a.2) directs the IRE physician to base his impairment opinion on the injury described in the NCP; here, Dr. Bednarz considered all of Claimant's ailments not just those in

the NCP. Claimant argues that because the WCJ accepted the impairment rating, the NCP was "implicitly amended" to include his post-surgical problems. Claimant's Brief at 24. We reject Claimant's argument.

First, Section 306(a.2) states that the impairment rating is to be based on the "compensable injury," but it does not state that an impairment rating based on all of a claimant's medical conditions changes the work injury. Section 413(a) governs the establishment of a work injury, and it permits a WCJ to amend an NCP during litigation of any petition even without a review petition being filed. It may be that in an IRE proceeding where the work injury description becomes an issue in the case, the WCJ could amend the NCP. However, the WCJ is not required to do so, and, here, the WCJ did not do so. *See Cinram Manufacturing*, 601 Pa. at 533, 975 A.2d at 582.

Second, Dr. Bednarz did not opine that the work injury was anything other than an ankle sprain. Out of an abundance of caution, Dr. Bednarz included all of Claimant's right foot and ankle conditions in his impairment rating. He concluded that the 13% full body impairment assigned to Claimant was based entirely on Claimant's *pre-existing* flat foot condition. Dr. Bednarz specifically assigned a zero percent impairment to the ankle sprain, which was the only work-related injury in the NCP. By modifying Claimant's disability status, the WCJ did not "implicitly amend" the NCP. It would have been more precise for the WCJ to have modified Claimant's disability status based on a 0% impairment, but it is of no moment. The modification was warranted because the impairment rating was less than 50%. In short, Dr. Bednarz's opinion and the WCJ's disposition of the modification petition did not

amend the description of the work injury in the NCP.

Likewise, the WCJ's acceptance of the IRE did not alter Employer's burden of proof. Claimant argues that the Board acted contrary to *Gumro v. Workmen's Compensation Appeal Board (Emerald Mines Corp.)* 533 Pa. 461, 626 A.2d 94 (1993), by placing the burden of proof on Claimant, instead of on Employer, with respect to additional injuries Claimant sought to add to the NCP. Claimant argues that because his alleged additional work injuries were to the same body part that was the subject of the NCP, Employer should have been required to prove that they were not work-related under *Gumro*, and it failed.

In *Gumro*, the Pennsylvania Supreme Court held that an employer seeking a termination must prove that the claimant is no longer disabled or that an independent cause for the current disability arose after the work injury. *Id.* at 466–67, 626 A.2d at 97. *Gumro* was understood to place the burden of proof on the employer where the case involved additional physical injuries very similar to the original work injury or at least involved the same body part or system. *See Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster),* 556 Pa. 325, 728 A.2d 902 (1999); *City of Philadelphia v. Workers Compensation Appeal Board (Fluek),* 898 A.2d 15 (Pa.Cmwlth.2006).

■ However, in *Cinram Manufacturing,* the Supreme Court clarified the meaning of *Gumro.* Citing the "legitimate allocation to claimants of the burden to prove injuries which are not accepted by employers," the Supreme Court declined to disturb this Court's determination that an alleged herniated lumbar disc is an injury separate from an accepted lumbar sprain. *Cinram Manufacturing,* 601 Pa. at 534 n. 9, 975 A.2d at 582 n. 9. Where the injuries are separate, "the burden rests with claimants to establish the existence of additional compensable injuries giving rise to corrective amendments, regardless of the procedural context in which the amendments are asserted." *Id.* at 533, 975 A.2d at 582. In short, *Cinram Manufacturing* squarely places the burden of proving additional injuries upon the claimant. Claimant understood this, which is why he filed a review petition.

Employer did not have to prove that Claimant's other foot and ankle problems were not work-related. Even so, its evidence proved that point. The WCJ accepted Dr. Raklewicz's opinion that Claimant was fully recovered from his ankle sprain, the only work injury, and that his other conditions, flat foot deformity and ankle degeneration, were congenital and not related to the work injury. Assuming, *arguendo,* that Employer had the burden of proof with respect to the alleged additional injuries, it met that burden.[7]

We hold that the termination petition was properly granted. Dr. Raklewicz testified that Claimant was fully recovered from the injury listed on the NCP, *i.e.,* a right ankle sprain. This testimony, which was credited, proved full recovery from the recognized work injury. Claimant's contrary argument simply restates his argument that Dr. Bednarz expanded the work injury, an argument we have already rejected.

---

**7.** It is unclear to what extent Claimant is arguing his broken leg should have been added to the NCP. Pursuant to *Cinram Manufacturing,* Claimant had the burden of proving his broken leg occurred as a consequence of his work injury. Because the WCJ rejected his evidence on this issue, he failed to do so. Claimant fell and broke his leg because of his congenital foot and ankle conditions, not because of the ankle sprain.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 2nd day of October, 2013, the order of the Workers' Compensation Appeal Board dated April 9, 2013, in the above captioned matter is hereby AFFIRMED.