IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sixto Manuel Garcia-Guerrero, : 
               Petitioner : 
               : 
     v. : No. 1394 C.D. 2019
               : SUBMITTED: June 19, 2020
Workers' Compensation Appeal : 
Board (Southeast Personnel : 
Leasing), : 
              Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: October 23, 2020

Sixto Manuel Garcia-Guerrero (Claimant), *pro se*, petitions this Court for review of the August 20, 2019 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ). The WCJ terminated Claimant's benefits under the Workers' Compensation Act (Act)[1] because he determined that Claimant had fully recovered from his work injury, and denied Claimant's petition seeking to amend the description of his work injury. After review, we affirm.

## I.  Procedural and Factual Background

Claimant injured his lower back on April 6, 2016, while lifting boxes in a warehouse during the course of his employment with Southeast Personnel Leasing (Employer). Notes of Testimony (N.T.), 11/2/17, at 7-8. Employer accepted liability for the work injury, described as a lower back sprain, through issuance of a

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Notice of Temporary Compensation Payable (NTCP), which converted to a Notice of Compensation Payable (NCP) by operation of law.[2] Certified Record (C.R.), Item Nos. 26-27. Following an independent medical examination (IME) performed on May 17, 2017, the results of which concluded Claimant had fully recovered from his April 6, 2016 work injury, Employer filed a petition seeking termination of Claimant's benefits. C.R., Item No. 2.

Claimant denied having fully recovered from his work injury and filed a petition alleging the accepted work injury was incorrect, as it failed to acknowledge that Claimant suffered a herniation at the L5-S1 level of his spine. C.R., Item Nos. 4-5. Employer denied the allegation. *Id.*, Item No. 7.

In support of its termination petition, Employer presented the deposition testimony of Dr. Amir H. Fayyazi, an orthopedic surgeon who performed the May 17, 2017 IME. Claimant testified live before the WCJ and presented the deposition testimony of his treating physician, Dr. Robert W. Mauthe.

### A. Employer's Evidence

As part of the May 17, 2017 IME, Dr. Fayyazi obtained Claimant's medical history, including the circumstances of the work injury and the treatments received, and performed a physical examination. C.R., Item No. 21, Fayyazi Dep., 11/1/17, at 15-17. Dr. Fayyazi testified that he prefers to review a claimant's medical records after the completion of the IME to prevent any possible bias to his clinical impressions. *Id.* at 17. Claimant was unable to provide a concise medical history, however, and Dr. Fayyazi referred to Claimant's medical records throughout the

---

[2] Section 406.1(a) of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(a), permits an employer to initiate workers' compensation payments by means of an NTCP without admitting liability for the alleged work injury. If the employer fails to file a notice denying liability for the work injury within the 90-day period during which temporary compensation is payable, the employer is deemed to have admitted liability and the NTCP converts into an NCP.

examination. *Id.* at 20. Claimant advised that the chiropractic treatment he received did not help with his pain, which he described as an 8 out of 10 and treated with naproxen and Tylenol. *Id.* at 21, 23. Claimant asserted that he received an injection in his back a few days prior to the IME. *Id.* at 21-22. Dr. Fayyazi noted that this information conflicted with Claimant's medical records, which documented that the injection was administered approximately six weeks earlier. *Id.* at 22.

Claimant's pain was localized to his lower back and left leg, and he complained of difficulty with both standing and sitting. *Id.* at 19, 22. While Claimant indicated he was unable to walk more than a block, Dr. Fayyazi observed that Claimant had no issue walking from the parking lot located more than a block away. *Id.* at 22. Dr. Fayyazi further noted that Claimant exhibited no difficulty with walking or standing and he stood for approximately 20 minutes during the IME. *Id.* at 23-24, 26. Moreover, Claimant's balance and gait were normal. *Id.* at 26. Claimant refused to "go up" on his heels while standing but had no issues walking on his heels. *Id.* Dr. Fayyazi interpreted Claimant's actions and statements during the IME as an attempt to manipulate the results, given that Claimant refused to perform maneuvers he was then able to perform. *Id.* at 26-27.

Dr. Fayyazi testified that Claimant's thoracic and cervical spine were normal upon physical examination and Claimant demonstrated a full range of motion. *Id.* at 27-28. Claimant expressed pain during the physical examination of his lumbar spine; however, Claimant bent forward and backward in a manner Dr. Fayyazi deemed inconsistent with someone experiencing a high level of pain in that region. *Id.* at 28-30. Dr. Fayyazi described Claimant's gait when leaving the exam room as a reverse antalgic gait of the type one exhibits when manufacturing a limp. *Id.* at

3

34. Overall, Dr. Fayyazi found no objective evidence of the pain symptoms Claimant described. *Id.* at 31.

The results of June 8, 2016 and October 12, 2016 magnetic resonance imaging (MRI) studies of Claimant's spine indicated mild degenerative changes and a borderline disc protrusion at the L5-S1 level but contained no other significant findings. *Id.* at 35-36, 44. A December 14, 2016 electromyography (EMG) study performed by Dr. Mauthe was unremarkable and Dr. Fayyazi detected no sign of radiculopathy. *Id.* at 36. None of Claimant's medical records indicated Claimant suffered from a disc herniation. *Id.* at 49. Dr. Fayyazi diagnosed Claimant's work injury as a lumbar sprain from which Claimant had fully recovered and opined that Claimant could return to full-duty work without restriction. *Id.* at 40-41.

### B. Claimant's Evidence

At the hearing before the WCJ, Claimant testified that he continued to suffer from all his original symptoms, including pain in his lower back and legs and weakness in his legs, particularly on the left side. N.T., 11/2/17, at 8. Claimant's pain prevented him from sleeping at night. *Id.* Previously, Claimant treated his symptoms with injections, medication, physical therapy, acupuncture, and chiropractic treatments. *Id.* at 9. Claimant no longer attended physical therapy or treated with a chiropractor and he did not take any prescription or over-the-counter medication to treat his symptoms. *Id.* at 9, 17-18. His last epidural injection was approximately six months before the WCJ's hearing. *Id.* at 9. Claimant received no treatment for his symptoms because nothing worked and his pain, which he described as a 7 out of 10, had worsened over time. *Id.* at 18-20.

Claimant did not believe he had fully recovered from his work injury and he was not able to return to his pre-injury job, as it required him to lift boxes, bend over,

and jump on and off a pallet jack. *Id.* at 11-12. He testified that he could not sit for long periods of time and could only stand for 20 to 30 minutes before experiencing pain and weakness in his legs. *Id.* at 12, 20. Claimant stated he would return to a position with Employer provided he could move freely and "have [his] medication." *Id.* at 12. Claimant testified that he was unable to stand on his toes during the May 17, 2017 IME due to weakness in his legs. *Id.* at 11. Claimant's daily activities at home were limited to moving from the bed to the bathroom and moving slowly around the house. *Id.* at 23.

Dr. Mauthe testified that he first examined Claimant on September 27, 2016, approximately six months after Claimant sustained the April 6, 2016 work injury. C.R., Item No. 18, Mauthe Dep., 2/20/18, at 10. Dr. Mauthe's practice primarily consists of treating individuals for "workers['] comp[ensation]" claims and "determin[ing] who can work and who can't." *Id.* at 7. Claimant was referred to Dr. Mauthe because conservative care had "failed." *Id.* at 12. Dr. Mauthe stated that, at the time of his initial examination, he did not know the exact mechanism of Claimant's injury; however, he was able to "figure out" that Claimant pulled a heavy box and experienced pain in his back. *Id.* at 11.

Dr. Mauthe did not believe that Claimant magnified his symptoms during the exam. *Id.* at 12-13. Claimant had reduced forward flexion and extension, but Dr. Mauthe detected no weakness during the straight leg test and Claimant's reflexes were good. *Id.* at 13. Claimant was "primarily just tender" at the L5-S1 level of his spine. *Id.* This finding was supported by Claimant's June 8, 2016 MRI, which indicated a protrusion at the L5-S1 level of his spine. *Id.* Dr. Mauthe did not detect any "obvious nerve root compression." *Id.* Dr. Mauthe diagnosed Claimant with

5

an L5-S1 disc protrusion, which he attributed to the April 6, 2016 work injury, and prescribed topical anti-inflammatories. *Id.* at 14.

After Claimant failed to respond to conservative care, Dr. Mauthe performed an EMG on December 14, 2016. *Id.* at 16. The results of the EMG were negative; however, a computerized tomography (CT) discogram dated October 27, 2017, confirmed Claimant's subjective complaints and Dr. Mauthe's initial diagnosis of a "substantial abnormality at L5-S1." *Id.* at 16, 19.

Dr. Mauthe opined that Claimant's treatment, including a December 22, 2017 surgical decompression of Claimant's L5-S1 disc, was reasonable and necessitated by the April 6, 2016 work injury. *Id.* at 19-20. This opinion was based in part on Dr. Mauthe's understanding that Claimant had no preexisting lower back condition, although he acknowledged there were no diagnostic studies of Claimant's spine that predated the April 6, 2016 work injury. *Id.* at 27. Dr. Mauthe noted that his diagnosis and clinical impressions were corroborated by the medical reports generated by Claimant's other treating physicians. *Id.* at 22. Dr. Mauthe further opined that Claimant was temporarily totally disabled and not capable of working in an unrestricted capacity without posing a risk to himself and Employer. *Id.* at 24. Dr. Mauthe disagreed with Dr. Fayyazi that Claimant had recovered from his work injury. *Id.* at 25.

Dr. Mauthe agreed on cross-examination that Claimant's disc protrusion was not a herniation and, prior to Claimant's decompression surgery, Dr. Mauthe's clinical notes indicated Claimant could return to work in a light-duty capacity. *Id.* at 44, 48. As to Claimant's purported symptom exaggeration during the IME, Dr. Mauthe suggested that many claimants will embellish at an IME because the process is adversarial and claimants "feel like they have to prove themselves." *Id.* at 26. Dr.

6

Mauthe stated that it "wouldn't surprise" him if Claimant magnified his symptoms during the IME with Dr. Fayyazi. *Id.* at 49.

## C. WCJ's Decision

During the deposition of Dr. Mauthe, Employer lodged a hearsay objection to the introduction of medical reports generated by Claimant's treatment providers who did not testify. Mauthe Dep. at 22. The WCJ sustained the objection in his April 11, 2017 decision and excluded those medical reports. C.R., Item No. 10, WCJ Decision at 4.

After summarizing the relevant testimony, the WCJ made credibility determinations. The WCJ discredited Claimant's testimony because his subjective complaints of pain were not supported by Dr. Fayyazi's objective findings. *Id.* at 5. Dr. Fayyazi's testimony was deemed more credible than Dr. Mauthe's. *Id.* The WCJ credited Dr. Fayyazi's opinion that Claimant had fully recovered from his April 6, 2016 work injury as it was "based on a thorough examination and discussion of the findings of that examination." *Id.* Dr. Fayyazi pointed out the lack of objective findings to support Claimant's complaints of severe pain with no relief despite treating with multiple providers. *Id.* Dr. Fayyazi further noted that Claimant refused to stand on his toes during the IME due to alleged weakness in his legs but was otherwise able to stand without difficulty throughout the examination. *Id.*

The WCJ found that Claimant failed to establish he sustained any injury beyond a lower back sprain on April 6, 2016. WCJ Finding of Fact (F.F.) No. 3. Consequently, the WCJ denied Claimant's petition seeking an amendment to the description of his work injury. WCJ Decision at 8. The WCJ further found that Employer established, through the credible medical testimony of Dr. Fayyazi, that Claimant had fully recovered from his April 6, 2016 work injury. WCJ F.F. No. 4.

7

Employer's termination petition was granted, effective May 17, 2017. WCJ Decision at 8. Claimant appealed to the Board, which affirmed. This appeal followed.[3]

## II. Issues

On appeal, Claimant raises the following issues: (1) the WCJ's decision was not reasoned within the meaning of Section 422(a) of the Act;[4] (2) the evidence did not support a finding that Claimant has fully recovered from his work injury; and (3) the WCJ erred in excluding as hearsay the medical reports of Claimant's non-testifying treatment providers.

## III. Analysis

### A. Reasoned Decision under Section 422(a)

First, Claimant argues that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act. Claimant argues that the WCJ merely dismissed Claimant's testimony as not credible, without further explanation, and the WCJ did not clarify why he discredited the testimony of Claimant's expert.

Section 422(a) provides, in pertinent part, that "[a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. Further, when faced with

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512 (Pa. Cmwlth. 2002).

[4] 77 P.S. § 834.

conflicting evidence, the WCJ must adequately explain his reasons for rejecting or discrediting competent evidence. *Id.*

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In a case where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible . . . could be sufficient to render the decision adequately 'reasoned.'" *Id.* at 1053.

However, where the medical experts testified solely by deposition, resolution of conflicting medical testimony cannot be supported by a mere statement that one expert was deemed more credible than another. *Id.* While the WCJ is the sole arbiter of credibility and evidentiary weight, he must provide an adequate basis for rejecting a witness's testimony when he does not testify live before the WCJ. *Id.* at 1052-53. "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 1053.

Claimant testified live before the WCJ, who assessed Claimant's demeanor and concluded that "Claimant's live testimony [wa]s not credible." WCJ Decision at 5. Under *Daniels*, the WCJ's conclusion that Claimant lacked credibility is sufficient and, therefore, the reasoned decision requirement under Section 422(a) has been satisfied.

The WCJ's resolution of the competing medical testimony, however, requires further analysis. In that regard, the WCJ summarized the medical testimony and

concluded that "[t]he deposition testimony of [Dr. Fayyazi] is more credible than Dr. Mauthe's deposition testimony." WCJ Decision at 5. Significant to the WCJ's conclusion was the fact that Dr. Fayyazi's opinion was based on a thorough physical examination and a discussion of his findings. *Id.* The WCJ also considered Dr. Fayyazi's testimony regarding the absence of objective findings that would support Claimant's complaints of severe pain. *Id.* Moreover, Claimant stood during the majority of the IME without difficulty, a fact which contradicted Claimant's refusal to stand on his toes, claiming he lacked strength in his legs. *Id.*

Contrary to Claimant's assertions, the WCJ articulated several objective bases for his credibility determinations with regard to the medical testimony. These explanations more than satisfy the reasoned decision requirement of Section 422(a) of the Act. We will not disturb this decision on appeal.

### B. Employer's Termination Petition

Next, Claimant argues that Employer failed to establish that he had fully recovered from his April 6, 2016 work injury.[5]

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury. *Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). An employer meets this burden by presenting competent medical evidence of the claimant's full recovery from the work injury established in the NCP. *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013). It is

---

[5] In furtherance of Claimant's argument that substantial evidence supports a finding that he has not fully recovered from the April 6, 2016 work injury, Claimant cites medical records that are not part of the certified record. However, this Court may only consider those facts that are duly certified in the record on appeal. *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012).

irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is substantial evidence to support the findings actually made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Sherrod v. Workmen's Comp. Appeal Bd. (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Comp. Appeal Bd. (Topps Co., Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997).

Presently, the WCJ's finding that Claimant had fully recovered from his work injury was based on the credible opinions of Dr. Fayyazi, who testified that Claimant had no difficulty walking or standing for an extended period during the IME and that Claimant's balance and gait were normal. Reproduced Record (R.R.) at 23, 26. Dr. Fayyazi noted that Claimant refused to attempt certain maneuvers that he was later able to perform. *Id.* at 26. Claimant refused to "go up" on his heels while standing, for example, but had no trouble walking on his heels. *Id.*

Claimant's thoracic and cervical spine were normal upon physical examination and he demonstrated a full range of motion. *Id.* at 27-28. While Claimant expressed pain during the physical examination of his lumbar spine, he bent forward and backward in a manner Dr. Fayyazi deemed inconsistent with someone experiencing a high level of pain in that region. *Id.* at 28-30. Overall, Dr. Fayyazi found no objective evidence of the pain symptoms Claimant described. *Id.* at 31.

Dr. Fayyazi further testified that Claimant's MRIs revealed mild degenerative changes and a borderline disc protrusion at the L5-S1 level but contained no other

significant findings. *Id.* at 35-36, 44. The EMG study performed by Dr. Mauthe was unremarkable and Dr. Fayyazi found no sign of radiculopathy. *Id.* at 36. Dr. Fayyazi therefore opined that Claimant had fully recovered from the April 6, 2016 work injury. *Id.* at 40.

The testimonies of Dr. Mauthe and Claimant that disfavored a finding of full recovery were rejected by the WCJ, and this Court will not revisit those credibility determinations. Having examined the credited testimony of Dr. Fayyazi, we conclude that the WCJ's finding of full recovery is supported by substantial evidence.

### C. Hearsay Exclusion of Medical Reports

Finally, Claimant argues that the WCJ should have accepted into evidence the notes and reports of his non-testifying physicians because Dr. Mauthe relied on these records in forming his opinion that Claimant continued to be disabled by the April 6, 2016 work injury.

Section 422 of the Act[6] provides that medical reports are admissible where the claim for workers' compensation involves disability of 52 weeks or less. Medical reports are also admissible where a workers' compensation claim involves disability exceeding 52 weeks, unless the party against whom the reports are offered objects to their introduction.

A medical witness may express an opinion based upon the medical records of others, even if those records were not introduced into evidence, so long as they are the kind of records upon which the witness customarily relies in the practice of his or her profession. *Empire Steel Castings, Inc. v. Workers' Comp. Appeal Bd. (Cruceta)*, 749 A.2d 1021, 1026 (Pa. Cmwlth. 2000). The reports themselves,

---

[6] Added by the Act of June 26, 1919, P.L. 642, 77 P.S. § 835.

however, are hearsay. *Cordero v. Workmen's Comp. Appeal Bd. (H.M. Stauffer & Sons, Inc.)*, 664 A.2d 1106, 1109 (Pa. Cmwlth. 1995).

Here, Claimant sustained his work injury on April 6, 2016. Employer filed its termination petition more than 52 weeks later, on July 18, 2017. Employer objected to introduction of the medical reports as hearsay. *See* Mauthe Dep. at 22. We conclude that the reports were properly deemed inadmissible under Section 422 of the Act.

Employer did not object to Dr. Mauthe expressing an opinion based, in part, on his review of the disputed reports. The objection lodged by Employer focused solely on introduction of the reports themselves. Because the treatment providers who authored those reports did not testify, the reports constitute hearsay. *Cordero*, 664 A.2d at 1109. We discern no error in the WCJ's decision to exclude the reports on hearsay grounds.

## IV.   Conclusion

The WCJ's decision was sufficiently reasoned to satisfy the requirements of Section 422(a) of the Act and his finding that Claimant had fully recovered from his April 6, 2016 work injury is supported by substantial evidence. Furthermore, the WCJ properly excluded as hearsay the medical reports authored by Claimant's non-testifying treatment providers. Accordingly, we affirm the order of the Board.

_____
ELLEN CEISLER, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sixto Manuel Garcia-Guerrero, :
    Petitioner :
     :
   v.   : No. 1394 C.D. 2019
     :
Workers' Compensation Appeal :
Board (Southeast Personnel :
Leasing), :
    Respondent :

# **O R D E R**

AND NOW, this 23rd day of October, 2020, the August 20, 2019 Order of the Workers' Compensation Appeal Board is hereby affirmed.

        _____
        ELLEN CEISLER, Judge