# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eddie Johnson, :
                    Petitioner :
                              :
            v.                : No. 464 C.D. 2021
                              : SUBMITTED: September 17, 2021
Driversource, Inc. :
(Workers' Compensation Appeal :
Board), :
                    Respondent :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  February 24, 2022**


Claimant, Eddie Johnson, petitions for review from the April 15, 2021 order of the Workers' Compensation Appeal Board.  The Board affirmed the workers' compensation judge's (WCJ) August 12, 2020 Decision and Order that granted, in part, Claimant's petition to review compensation benefits (review petition) and granted the petition for termination of compensation benefits (termination petition) filed by Employer, Driversource, Inc.  We affirm.

## I.    Background and Procedural History

On December 4, 2018, Claimant worked for Employer as a driver. While driving his route, he was struck head-on by another vehicle.  As a result of this accident, Claimant injured his right side, from his shoulder and thumb, down through his low back and to his knee.  Employer issued a notice of temporary

compensation payable, which later converted to a notice of compensation payable (NCP) by operation of law.

On July 3, 2019, Employer filed its termination petition, alleging Claimant had fully recovered from his work injuries as of April 8, 2019, pursuant to the opinion of Amir Fayyazi, M.D. The matter was assigned to the WCJ on July 5, 2019, and on September 9, 2019, Claimant filed his review petition alleging that the injuries, as originally described, should be amended to include myofascial pain syndrome, lumbar paraspinal strain/sprain, cervical strain/sprain, chronic bilateral low back pain, sprain of the metacarpophalangeal joint of the right thumb, sprain of the collateral ligament of his right knee, right wrist and hand sprain, a left elbow injury, and aggravation of degenerative joint disc disease or aggravation of degenerative disc disease. Employer filed an Answer denying the critical averments raised in the review petition.

Hearings were held by the WCJ on September 11, 2019, and March 6, 2020, and the parties each presented documentary evidence for the WCJ's consideration. At the conclusion of hearings, and after consideration of the documentary evidence presented by the parties, and admitted into evidence by the WCJ, the WCJ issued his Decision and Order. A summary of the WCJ's findings and conclusions follows below.

## II.    The WCJ's Decision and Order

In his August 12, 2020 Decision and Order, the WCJ made the following findings. The WCJ found Claimant credible relative to his testimony about his job duties. Finding of Fact (F.F.) 4. The WCJ found Claimant credible that he was in a motor vehicle accident, which resulted in injuries to his lumbar and cervical spine, as well as to his right knee, right thumb, and wrist. However, the

2

WCJ did not find Claimant's testimony to be credible that his low back injury continues to prevent him from returning to work in any capacity.[1] F.F. 10.

Claimant presented the deposition testimony of his doctor, Jason Erickson, D.O., who is board certified in physical medicine and rehabilitation and interventional pain medicine. Dr. Erickson began treating Claimant in April 2019 and opined that Claimant sustained a lumbar paraspinal strain as a result of his work-related motor vehicle accident. F.F. 8. The WCJ found:

> When reviewing the medical records, [Dr. Erickson] opined that Claimant also has myofascial pain syndrome, a lumbar paraspinal strain and sprain, cervical strain and sprain, chronic bilateral low back pain, sprain of the metacarpophalangeal joint of the right thumb, sprain of the collateral ligament of the right knee, right wrist and hand sprain and strain, left elbow injury, aggravation of degenerative disc disease, degenerative joint disease, lumbar radiculitis and thoracic kyphosis although he noted that the thoracic kyphosis is not a diagnosis caused by the [work accident]. He noted that facet arthrosis is arthritis of the lumbar spine and was noted in the imaging, but this would not be caused by the accident. He feels that these underlying conditions could be aggravated by the accident. He believes that there was an aggravation of the tricompartmental osteoarthritis of the right knee. Dr. Erickson conceded that he is unable to render an opinion to a reasonable degree of medical certainty as to whether . . . Claimant's facet arthritis was aggravated by the accident . . . .
>
> [W]hen asked whether he could render an opinion to a reasonable degree of medical certainty as to whether [] Claimant could currently return to his pre-injury job, [Dr. Erickson] indicated that he cannot comment on that as he hadn't followed up with Claimant to see if he could return to that level of duty. As of his last examination in July 2019, he did not feel [] Claimant would be capable of a return to that

---

[1] As background, the Board noted that Employer filed a February 25, 2019 petition to modify compensation benefits (modification petition), alleging that Claimant was able to return to work with restrictions, as determined by his treating medical provider, and that he had returned to work with a different employer for some period of time. The parties agreed to keep the present matter separate from the modification petition. Thus, the Board did not address it as part of its Opinion and Order, and we do not address it here. *See* Board's Op. and Order, 4/15/2021 at 2, n.1.

position. Since Dr. Erickson has not seen Claimant in a follow[-]up appointment, he was not in a position to say whether Claimant had fully recovered from [his] work injur[ies]. As of his last examination, he did not believe Claimant had recovered due to Claimant's continued complaints of pain and the need to seek further treatment. He did not recall if Claimant was still on medications at that last appointment. Dr. Erickson was not sure whether Claimant continued to treat with other providers at the time of his evaluation.

On cross examination, Dr. Erickson acknowledged that he saw Claimant initially in March or April 2019. He then saw Claimant at a subsequent visit to perform the initial injection. He acknowledged that Claimant sustained a soft tissue injury and the injections he provided were not into the spinal column. Dr. Erickson acknowledged he has not provided a referral to any surgeons for Claimant's treatment.

Dr. Erickson acknowledged that when he saw [] Claimant the next time on July 11, 2019[,] to perform the second injection, he did not perform a separate physical examination. He conceded that he had not seen Claimant in follow up since July 11, 2019. He doesn't know how Claimant responded to that second injection. At the time of [Dr. Erickson's] testimony, Claimant had not scheduled a further appointment with his office. Dr. Erickson acknowledged that at the first visit he did not diagnose Claimant with radiculopathy. Dr. Erickson acknowledged that at the first visit, he did not recall whether Claimant was complaining of cervical pain, right thumb pain, right knee pain, right wrist or hand pain or left elbow pain. He does not believe Claimant was complaining of radiculitis or radiculopathy as of that first visit. Dr. Erickson acknowledged that he had not seen any medical records after July 2019, . . . where Claimant was complaining of radiculitis or radiculopathy. He then agreed that at the time he evaluated Claimant, Claimant would have been fully recovered from any radiculopathy or radiculitis.

Similarly, Dr. Erickson has not seen any records after July 2019, where Claimant appear[ed] to treat for the cervical strain or sprain, [] myofascial pain syndrome, the lumbar sprain or strain or the bilateral low back pain. Dr. Erickson also has not seen any medical records post[-]dating July 2019[,] where Claimant was complaining of a sprain of the metacarpal joint of the right thumb, hand or wrist, or for treatment of the collateral ligament of the right knee. Simply put, Dr. Erickson has not seen any medical records that post-date[] July 2019[,] for any condition that may or may not be related to the accident.

4

*Id*.

Employer presented the deposition testimony of Dr. Fayyazi, who is board certified in orthopedic surgery. F.F. 7. Dr. Fayyazi performed an independent medical evaluation (IME) of Claimant on April 8, 2019. *Id*. The WCJ found:

> Claimant told Dr. Fayyazi that he was involved in a motor vehicle accident on December 4, 2018. He explained to Dr. Fayyazi that he was taken to the emergency room and treated for a number of injuries. He was treated for neck pain which, in general, had improved. He treated for an injury to his right thumb but was not complaining of pain in the right hand or wrist at the time of the evaluation. Similarly, Claimant told Dr. Fayyazi that [his] neck had improved, and it feels, "pretty good," and he denied having any problems with his neck prior to this incident.
>
> Claimant's primary complaint was of low back pain for which he has been treating since the date of injury. He described the pain going down his legs. He further advised that immediately after the accident, he was placed on light duty. Claimant confirmed that he was not working at the time of the evaluation. Claimant also complained to Dr. Fayyazi of right knee pain. He advised Dr. Fayyazi that he had been treating for the right knee at St. Luke's [O]ccupational [M]edicine and was then sent for physical therapy. Claimant was still complaining of symptoms in the right knee at the time of Dr. Fayyazi's evaluation.

*Id*.

In addition, the WCJ found that by the time Dr. Fayyazi examined him, Claimant was no longer complaining of wrist pain, and Dr. Fayyazi believed that, at that point, Claimant had fully recovered from any right wrist sprain. *Id*. Dr. Fayyazi concluded that Claimant had also recovered from any injury to his right thumb and recovered from any cervical neck strain or sprain relative to his accident. *Id*.

As of the IME, Dr. Fayyazi had not seen films relative to Claimant's complaints of low back and right knee pain, and he still wanted to review these images. However, prior to viewing these films, Dr. Fayyazi released Claimant to work with restrictions. After reviewing the films, Dr. Fayyazi opined that Claimant

5

had experienced a lumbar strain or sprain but that Claimant had recovered from same and did not require any work restrictions in these regards. The WCJ found that Dr. Fayyazi testified that Claimant had fully recovered from any and all injuries he sustained in the motor vehicle accident, that he would not place any restrictions on Claimant, and that Claimant did not need further treatment for his work injuries. *Id.* The WCJ specifically stated that Dr. Fayyazi "rendered the opinion that Claimant had a lumbar strain or sprain from which he had fully recovered" and that "Claimant's current right knee complaints are related to [] underlying arthritis." *Id.*

After consideration of the testimony and a review of the evidence of record, the WCJ found that Claimant's injury description "should be amended to include a lumbar sprain, cervical sprain, metacarpal joint sprain of the right thumb, right wrist sprain and right knee sprain." F.F. 10. The WCJ rejected the contention that Claimant sustained any other injury not specifically listed in the preceding description. *Id.*

In addition to his findings relative to Claimant's credibility, the WCJ found Dr. Fayyazi's testimony more credible than Dr. Erickson's testimony where there were contradictions between the two. *Id.* The WCJ explained that he found it significant that Dr. Erickson (1) did not detail his examination of Claimant, (2) only examined Claimant in regard to his low back, and (3) did not detail the cause of the injuries Claimant sought to include in his review petition. *Id.* The WCJ found that Dr. Fayyazi performed a thorough examination and "credibly explained how his opinion, that Claimant had fully recovered from any and all work injuries, was based upon his clinical examination and [] from the later received diagnostic records." *Id.* The WCJ found that Dr. Fayyazi "more thoroughly explained why he [did] not find Claimant's injuries functionally limiting or disabling," and "Dr. Erickson's opinions

6

seem to be premised on what diagnoses he reviewed in the medical records and concedes he did not perform an examination of any kind except of Claimant's back." *Id*.

Based on the foregoing, the WCJ concluded that Claimant met his burden of proof on the review petition, in part, and that his description of injuries "should be amended to include lumbar sprain, cervical sprain, right wrist sprain, right thumb sprain and right knee sprain." Conclusion of Law (C.L.) 2. The WCJ further concluded that Employer had successfully met its burden of proof on the termination petition and that Claimant was fully recovered from his work injuries as of June 21, 2019. C.L. 3. Claimant appealed to the Board.

### III. The Board's Opinion

The Board opined:

[T]he WCJ's findings that Claimant sustained additional work-related strains and sprains to various body parts, of which he fully recovered and was able to resume his pre-injury work as of Dr. Fayyazi's June 2019 opinion was supported by substantial, competent evidence. Furthermore, the WCJ thoroughly explained that in addition to other objective reasons, he accepted Dr. Fayyazi's opinions over the opinions of Dr. Erickson because Dr. Fayyazi conducted a more thorough physical examination of Claimant's entire body compared to Dr. Erickson's examination of only Claimant's lumbar spine. This rational and objective explanation reveals no error in the WCJ's credibility determinations. Ultimately, since we are able to perform effective judicial review of the matter, the WCJ's Decision was adequately reasoned and we determine no error.

Board's Op. and Order, 4/15/2021, at 15. Despite Claimant's contention that Employer, here, was required to issue a notice of ability to return to work (NARW) pursuant to Section 306(b)(3) of the Workers' Compensation Act (Act),[2] the Board

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §512(3).

7

stated "no such prerequisite must be met where the [employer] files a termination petition alleging full recovery as here. Consequently, [Employer] need not have issued a[n] NARW here because it filed a [t]ermination [p]etition." *Id*. at 14.

Accordingly, the Board affirmed the WCJ's Decision and Order, and Claimant now petitions this Court for review of the Board's Order.

## IV. Arguments

### A. Claimant's Arguments

Claimant argues that the Board erred by affirming the WCJ's grant of the termination petition where Dr. Fayyazi's original IME report, which was accompanied by an NARW, stated that Claimant was not able to return to unrestricted work, while the subsequent June 2019 report from Dr. Fayyazi was not accompanied by an NARW. Claimant contends that Employer's use of an NARW with Dr. Fayyazi's original IME report "is an implied admission that it was required . . . in the termination petition context." Claimant's Br. at 20 n.1. Claimant further contends that Dr. Fayyazi's June 2019 IME report does not state that Claimant is fully recovered from all his work injuries. Claimant also suggests that the Act requires that an NARW be issued before an employer seeks a change in the status of a claimant's indemnity payments, whether such change is associated with the filing of a modification petition, a suspension petition or, as in the instant matter, a termination petition.

In addition, Claimant argues that the Board erred by affirming the WCJ's determination that there was substantial evidence to support the termination petition because Dr. Fayyazi's testimony was equivocal. Claimant contends that it was Employer's burden to prove Claimant's right knee complaints were not related to his accident and that Dr. Fayyazi did not do that. Claimant states that in his April

8

2019 report, Dr. Fayyazi did not speculate as to when Claimant would be better and that it was not any less speculative for Dr. Fayyazi to assert Claimant was fully recovered two months after the IME, once he had had an opportunity to review x-rays taken shortly after Claimant's accident. Claimant adds that he did not have any knee symptoms prior to his accident and that his symptoms have continued since the accident.

Moreover, Claimant contends that Dr. Fayyazi's testimony was incompetent, as evidenced by the following: Dr. Fayyazi (1) imposed restrictions on Claimant in April 2019; (2) testified that Claimant needed additional medical treatment after April 2019; (3) found that Claimant was fully recovered from his work injuries in June 2019, even though no other physician testified as to when Claimant would no longer require treatment; and (4) found Claimant fully recovered as of June 21, 2019, even though he was not seen by any doctor, including Dr. Fayyazi, on that date.

Finally, Claimant argues that the Board erred by affirming the WCJ where the WCJ capriciously disregarded supporting evidence of Claimant's additional, disabling injuries and "[t]he WCJ did not hold Employer to its proofs on the termination petition." Claimant's Br. at 37. Claimant contends that there was no competent evidence to contradict Claimant's medical evidence that he had tricompartmental arthritis related to his accident, which continues to disable him and requires treatment. Claimant requests that this Court reverse the Board, deny the termination petition, and grant the review petition in full.

### B. Employer's Arguments

Employer argues that while Claimant attempted to add thirteen different diagnoses via his review petition, his medical expert only treated him for

9

one of the additional thirteen conditions. Employer contends that Dr. Erickson only treated Claimant for his low back and that he only personally diagnosed Claimant's lumbar sprain and strain. Thus, it was Claimant's doctor's testimony that was equivocal, as he failed to "review any records, could not provide any explanation for his causal opinions, and [] had little to no knowledge of his own patient's condition." Employer's Br. at 25. Employer adds that the WCJ properly rejected Dr. Erickson's opinions, and the Board did not err when it affirmed the WCJ in this regard.

Next, Employer contends that the Board did not err when it affirmed the WCJ's findings and credibility determinations relative to its termination petition. Employer asserts that Claimant's arguments against the termination petition "misconstrue the facts in the record and misstate relevant case law." Employer's Br. at 26. Employer argues that, unlike Dr. Erickson, Dr. Fayyazi performed a thorough, full examination of Claimant during his IME and provided detailed findings in his reports and in his deposition testimony. Employer emphasizes that Dr. Fayyazi acknowledged Claimant had ongoing issues relative to his knee and lumbar and cervical spine, but he explained that each of these were degenerative in nature and not caused by the work accident. In addition, Employer notes that Claimant did not rebut most of Dr. Fayyazi's opinions.

Employer concedes that Dr. Fayyazi performed his IME of Claimant on April 8, 2019, and subsequently rendered his opinion of Claimant's full recovery on June 21, 2019. However, despite Claimant's protestations to the contrary, Claimant "fails to reference any case law that prohibits" the same, and, in fact, "it is common and accepted practice for an expert to amend [his] opinions through and [sic] addendum report when [he] obtain[s] new information." Employer's Br. at 28-29. Employer explains that Dr. Fayyazi testified that after the IME, he wanted to be

10

able to review films of Claimant's low back and right knee "to 'fully clarify what type of injury' [] Claimant sustained" to those particular parts of his body. Employer's Br. at 29. Employer adds that, only as a precaution, did Dr. Fayyazi put restrictions on Claimant. *Id*. Dr. Fayyazi was later provided with the studies which he sought and accordingly, "was able to reach the correct diagnoses and opinions" which he expressed in his June 21, 2019 addendum report. *Id*. Employer contends that there was nothing speculative about the process engaged in by Dr. Fayyazi, despite Claimant's assertions otherwise.

Further, Employer argues that there is no requirement for an NARW to be issued as part of termination petition proceedings. Employer states that it agrees that an NARW is required as a prerequisite to obtaining a modification or a suspension of a claimant's indemnity benefits after a claim has been accepted and that the purpose of an NARW is to provide notice to the claimant of new medical information about his ability to work and its potential to impact his benefits. However, Employer states that it disputes Claimant's position that Section 306(b)(3)[3] of the Act, 77 P.S. §512(3), requires an NARW whenever a change in a medical condition occurs, and it argues that this Court has never adopted that kind of "rigid approach, and in fact, has recognized <u>numerous</u> examples when [] [Section]

---

[3] Section 306(b)(3) of the Act states:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following: (i) The nature of the employe's physical condition or change of condition. (ii) That the employe has an obligation to look for available employment. (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits. (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

11

[306(b)(3), 77 P.S.] §512(3)[,] does not apply. This is true even when an employer seeks to modify or suspend benefits." Employer's Br. at 32 (emphasis in original). Employer argues that, "[b]y the very nature of a [t]ermination [p]etition, Claimant is notified that [Employer] believes [] Claimant has fully recovered from the work injury and seeks to cut off all benefits." *Id*. at 34. It is "[t]he filing of the petition [that] puts [] Claimant on notice." *Id*.

Based on the foregoing, Employer asks this Court to affirm.

## V. Discussion

At the outset, we note that in order to terminate benefits, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290 (Pa. 1997).

"The NCP can be amended if the claimant files a review petition and proves that another injury subsequently arose as a consequence of the original injury." *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013) (internal citations omitted). "Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet the burden of proof." *Odd Fellow's Home of Pa. v. Workmen's Comp. Appeal Bd. (Cook)*, 601 A.2d 465, 467 (Pa. Cmwlth. 1991).

The WCJ is free to accept or reject, in whole or in part, the testimony or opinions of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). Determinations of credibility and weight to be accorded evidence are the prerogative

12

of the WCJ, not the Board or the Commonwealth Court. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994).

In a substantial evidence analysis where both parties present evidence, it is immaterial that there is evidence in the record that supports a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

In the instant matter, after analyzing the evidence, the WCJ determined that Dr. Fayyazi's testimony was more credible than Dr. Erickson's testimony, and he adequately explained his reasons for reaching this determination. The medical testimony was critical to the outcome here, both on the review petition and on the termination petition. Dr. Fayyazi's credited opinions reasonably supported adding injuries to Claimant's original claim, via the review petition, as well as terminating Claimant's benefits as of June 21, 2019. Thus, the Board did not err by affirming. *See Joy Mining Mach. v. Workers' Comp. Appeal Bd. (Noggle)*, 805 A.2d 1279, 1281 (Pa. Cmwlth. 2002) ("If the credited evidence constitutes substantial evidence, the [WCJ's] findings will not be disturbed even though there may be evidence to the contrary.").

We reject Claimant's assertion that Dr. Fayyazi's June 2019 addendum report was somehow speculative in nature because he waited to state that Claimant was fully recovered from his work injuries until after he had an opportunity to review x-ray films that were not available to him at the April 2019 IME. Dr. Fayyazi acted conservatively and with caution, not speculatively as Claimant suggests. Dr. Fayyazi gave Claimant the benefit of the doubt until he had an opportunity to review the films, and once he did, he was able to conclude that Claimant had fully recovered

13

from his work injuries.  It was not inappropriate for Dr. Fayyazi to have taken this approach.[4]  Further, although Dr. Fayyazi acknowledged Claimant continued to have various medical issues, he credibly determined that any such remaining issues were unrelated to the work accident.

In addition, Claimant's argument that Employer was required to issue an NARW is equally unavailing.  There is no requirement that an employer issue an NARW, other than in the context of obtaining a modification or suspension of a claimant's benefits.  *See* 77 P.S. §512(3), which specifically relates to compensation for partial disabilities.  The NARW requirement does not apply to terminations and the Act contains no similar provision where an employer alleges a complete recovery.  Moreover, as Employer correctly argues, there are instances, even within the context of a modification or suspension, where an NARW is not required, such as times when a claimant's restrictions are only slightly modified or when an employee is put on notice of an ability to return to work with restrictions by his own treating physician.  *See Smith v. Workers' Comp. Appeal Bd. (Caring Companions, Inc.)*, 55 A.3d 181 (Pa. Cmwlth. 2012).  As Employer states: "By the nature of a [t]ermination [p]etition, [c]laimant is notified that the employer believes the

---

[4] As the Board noted in its Opinion and Order, and we reiterate for our purposes here:

> [N]o case law has been brought to our attention which requires a subsequent IME to be performed where a medical expert alters his opinion based on additional information.  Rather, we observe that it is not an uncommon practice for medical experts to render addendums to their original IME reports where they obtain additional information which effects their medical opinion.  *See Morrison v. Workers' Comp. Bd. of Appeal (Rothman Inst.)*, 15 A.3d 93 (Pa. Cmwlth. 2010) (ruling that a medical expert's addendum report indicating that the claimant's lower back issues were due to a pre[]existing condition[,] after receiving MRIs and additional facts indicating a history of chronic low back pain, was competent).

Board Op. and Order, 4/15/2021, at 10.

14

claimant has fully recovered from the work injury and seeks to cut off all benefits. The filing of the petition puts the [c]laimant on notice." Employer's Br. at 34 (emphasis omitted). We agree and accordingly, conclude that no NARW was required in the instant matter.

## VI.   Conclusion

Because the Board affirmed the WCJ's Decision and Order, which was based on substantial, competent evidence, and we detect no error of law, the Board's order is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eddie Johnson,
                    Petitioner

        v.

Driversource, Inc.
(Workers' Compensation Appeal
Board),
                    Respondent

:
:
:
:
:   No. 464 C.D. 2021
:
:
:
:
:
:

## O R D E R

AND NOW, this 24th day of February, 2022, the April 15, 2021 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita